**STONE, Commissioner of Franchise Tax, v. INTERSTATE NATURAL GAS CO.**

**INTERSTATE NATURAL GAS CO. v. STONE, Commissioner of Franchise Tax.**

No. 9024.

Circuit Court of Appeals, Fifth Circuit.
April 29, 1939.

Writ of Certiorari Granted June 5, 1939.

See 59 S.Ct. 1047, 83 L.Ed. ——.

J. A. Lauderdale and Greek L. Rice, both of Jackson, Miss., for appellant A. H. Stone, Commissioner of Franchise Tax.

Garner W. Green, Marcellus Green, and Forrest B. Jackson, all of Jackson, Miss., William A. Dougherty, of New York City, and Maxwell Bramlette, of Woodville, Miss., for appellee Interstate Natural Gas Co.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

These appeals are from a judgment in the District Court whereby Interstate Natural Gas Company recovered against "A. H. Stone, Commissioner of Franchise Tax, the sum of $4,565" with interest and costs for which execution is ordered to issue. The alleged cause of action was that Stone had forced the Gas Company to pay under protest franchise taxes for 1935, 1936 and 1937 under Chapter 121, Laws of 1934 of the State of Mississippi, but unlawfully, because the Gas Company was engaged only in interstate commerce in Mississippi, so that the tax could not be collected from it because of the Commerce Clause of the Constitution, U.S.C.A.Const. art. 1, § 8, cl. 3. It was also pleaded that the Gas Company's immunity from such a tax was res judicata because of the decree of Dec. 4,

1931, of a three-judge federal court which enjoined other tax officials of the State from collecting under a similar statute. A third contention was that the statute offends the uniformity provisions of Sect. 112 of the Constitution of Mississippi. On agreed facts the first stated contention was sustained and the last two denied in the court below.

The important agreed facts are that the Gas Company was incorporated in Delaware in 1926, and since has acquired gas properties in northeast Louisiana, the gas from which it transports by its pipe lines into Mississippi and for about seventy-five miles through Mississippi into southeast Louisiana, where it sells it. On the way it wholesales gas to three distributors in Mississippi who take about 2% of all that is transported, but the contracts on which deliveries to these distributors are made are entered into in the main office in New York, and collections and management are carried on from a branch office in Louisiana. The Gas Company has no office in Mississippi, and no bank account there. It owns and maintains in the State rights of way, a pipe line and telephone line, and other real estate and personal property necessary and useful in carrying on its pipe line activity. The value of these properties is nearly three million dollars, and ad valorem taxes are paid on them. As a foreign corporation it filed with the Secretary of State under other statutes as a prerequisite to doing business in Mississippi a copy of its charter, and paid a required fee of $500, and appointed an agent for service of process. The taxes collected were correct in amount if any were collectible. The record in the three-judge case was in evidence.

■ Considering first the cross-appeal, we think the privilege or excise tax Act here involved was in no conflict with Sect. 112 of the Mississippi Constitution, for the section relates only to property taxation. Southern Package Corporation v. State Commission, 174 Miss. 212, 164 So. 45. Although the tax is measured in this case by the value of property invested in the State the Gas Company is not taxed because it owns it, but as we shall see because it has come into and remains in Mississippi to use it.

■ We conclude also that the judgment in the three-judge case of Dec. 4, 1931, is no estoppel. It does not appear to be between the same parties. The Gas Company is plaintiff in both suits but Stone, the present defendant who is sought to be bound by the former judgment, was not a party to it. This suit against him is a personal suit and the judgment rendered is a personal judgment. Execution on it would run against him. The reference to him as Commissioner is descriptio personae. Smietanka, Collector, v. Indiana Steel Co., 257 U.S. 1, 42 S.Ct. 1, 66 L.Ed. 99. The three-judge suit was against other individuals, who though officers were enjoined from what they were about to do on the ground that the law of their office did not justify them. The State of Mississippi for whom they tried to act was not a party, though her Attorney General was among those sued. She could not under the Eleventh Amendment, U.S.C.A.Const. have been sued. How officers who act for their government under an unconstitutional authority may be sued, and yet their governments not be bound by the judgment, is fully explained in United States v. Lee, 106 U.S. 196, 222, 1 S.Ct. 240, 27 L.Ed. 171. See also Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L. Ed. 828; Hussey v. Crane, 222 U.S. 88, 93, 32 S.Ct. 33, 56 L.Ed. 106; Carr v. United States, 98 U.S. 433, 25 L.Ed. 209; Stanley v. Schwalby, 162 U.S. 255, 16 S.Ct. 754, 40 L.Ed. 960. Stone can now justify his collection of these taxes as fully as the State of Mississippi could do if she were now sued; and as she is not bound by the former judgment against her officers, he is not.

■ But the judgment would be no estoppel if the parties were the same, for the tax here involved is under a new and different law. The taxes imposed are similar, but the Legislature made the substitution in order to accomplish changes, especially a new and strange definition of "doing business" discussed below, and the changes are sufficient to require a new determination.

■ We come thus to interpret the Act of 1934 and to determine whether it may be applied to this Gas Company. The Supreme Court of Mississippi has not construed it or its predecessor of 1930; so we must make our own construction. Chapter 89 of the Acts of 1930 (Code of Mississippi of 1930, § 4199), which the present Act repealed, levied "a franchise tax upon every corporation doing business in the state of Mississippi, not herein specifically exempted. Such tax shall be a

tax for continuance of enjoyment of all rights granted corporations under the corporate form of existence, if incorporated under the laws of this state, or by reason of any act of domestication, if incorporated under the laws of another state." "Doing business" was not defined, and probably meant that a corporation was not subject to the tax unless or until it carried on an active business of the kind named in its charter. So also a foreign corporation might be supposed not subject if it merely qualified to "do business" by filing copy of its charter with the Secretary of State under § 4164 and appointed an agent for service under § 4140, but did not become "domesticated" under §§ 4161 and 4162. The Act of 1934 does not confine itself to corporations but (Sect. 1) extends to associations, joint-stock companies and "every form of organization for pecuniary gain, having capital stock represented by shares, * * * having privileges not possessed by individuals or partnerships." * * * " 'Doing business' * * * shall mean and include each and every act, power or privilege exercised or enjoyed in this state, as an incident to, or by virtue of the powers and privileges acquired by the nature of such organization." There is imposed (Sect. 2) an annual "franchise tax or excise tax" upon each such organization existing in this State or hereafter organized under its laws. The same tax (Sect. 3) is then imposed on every such organization organized and existing by virtue of the laws of some other State or country "now, or hereafter doing business within this state, as hereinbefore defined." As to each class of organizations the tax is $1 per thousand dollars of "capital used, invested or employed * * * within this state," and it is explained that the tax is required in the case of domestic organizations "for the right granted by the laws of this state to exist as such organization, and enjoy, under the protection of the laws * * * the powers, rights, privileges," etc., Section 2, and in the case of foreign organizations for "the benefit and protection of the government and laws of the state", received by the capital which measures the tax. Section 3. Payment of the tax is made a condition precedent to the continued existence of domestic organizations and "to the right to continue business in this state, if not organized under the laws of Mississippi." Section 4. "Continue business" we construe to mean "continue to do business" in the new sense. There is a formula for measuring the tax to be paid which may not always be the assessed value of the property owned in the State, but the latter is the measure in the present case.

We think the tax is laid on a domestic organization because of its mere existence capitalized and ready to carry on its corporate activities. It need not do anything to incur it. The capital which is to measure the tax need not be actively employed, for the words are "used, invested or employed"; and the declaration is that the tax is payment for the mere right to exist and enjoy protection. In order to treat the foreign organization in as nearly the same manner as possible, the tax is applied to it so soon as it "does business" in the State. Under the common and natural meaning of these words a commercial activity would be understood, but the Legislature assigns a very artificial meaning to them, which includes not only any and every corporate act, but the exercise or enjoyment in the State of any power or privilege acquired by virtue of being so organized. The privilege and power of a corporation to sue and be sued, or even to acquire and hold property as such, are included. When this Gas Company, though it did not domesticate, filed its charter and appointed its agent for service in order to qualify for doing business in the old sense, it began the enjoyment in Mississippi of a privilege incident to its corporate organization, it began to "do business" in the new and artificial sense. It already had, we suppose, when the Act was passed its pipe and telephone lines, and so did not acquire them in Mississippi during the tax years, but it must have employed and used agents to maintain them. Without putting any gas through the pipes this corporate activity would go on. By the Legislature's queer definition, a foreign corporation formed for profit is doing business in Mississippi and is taxable so soon as it gets ready to be active by having property there and enjoying the protection of the State for it, and qualifies formally by filing its charter and naming its agent for process service. These latter acts clearly mark its appearance in the State. Thus both foreign and domestic corporations, though intending to do and actually doing no active business in the common sense except what is foreign or interstate commerce, are taxed, but are not taxed be-

cause they carry on such commerce. It is as though a capitation tax should be laid on residence, applicable to citizen and alien alike, irrespective of what they do, for mere general governmental protection. The resident could not escape the tax by engaging in interstate commerce. The charter which the Gas Company filed and obtained the right to enjoy in Mississippi grants to it power to do much more than to engage in the interstate transportation of gas and oil. The Gas Company could also have mined, bored for and refined gas, oil and other minerals in Mississippi, and transported and sold them within the State. It could have acquired, held and sold stocks in other corporations there, voting the stock and controlling the corporations, and could have acquired, held and sold real estate and personal property of every description, all by the express terms of its charter. This franchise or privilege tax is not escaped because the Gas Company chose only to transport and sell gas interstate. It owes no more tax because it did that. Therefore that activity is not taxed.

The tax is laid equally on a domestic and a foreign business corporation, and laid alike on either whether it carries on interstate commerce or not. There is no discrimination against foreign corporations or against interstate commerce. The tax is not on its face burdensome or oppressive, and is not shown to be so in its operation. It is evidently a tax for revenue and not designed to regulate either corporations or commerce. Therefore Stone contends that it is enforceable notwithstanding the Gas Company has in fact done no business in Mississippi except interstate commerce; pointing especially to Detroit International Bridge Co. v. Corp. Tax Board, 287 U.S. 295, 53 S.Ct. 137, 77 L.Ed. 314; Southern Natl. Gas Corp. v. State, 301 U.S. 148, 57 S.Ct. 696, 81 L.Ed. 970; Id., 233 Ala. 81, 170 So. 178; Coverdale v. Arkansas-Louisiana Pipe Line Co., 303 U. S. 604, 58 S.Ct. 736, 82 L.Ed. 1043. The Gas Company, contending the contrary, points with equal confidence to Ozark Pipe Line Corp. v. Moiner, 266 U.S. 555, 45 S.Ct. 184, 69 L.Ed. 439; State Tax Commission v. Interstate Natural Gas Co., 284 U.S. 41, 52 S.Ct. 62, 76 L.Ed. 156; Anglo-Chilean Nitrate Corp. v. Alabama, 288 U.S. 218, 53 S.Ct. 373, 77 L.Ed. 710; Dixie Ohio Express Co. v. State Revenue Com., 306 U.S. 72, 59 S.Ct. 435, 83 L.Ed. ——, and a score of other cases holding that interstate commerce is immune from various sorts of State taxation. It would be tedious to analyze the cases and impossible fully to reconcile them. The principle of stare decisis in constitutional interpretations has recently received shattering blows in the Supreme Court, and especially in the field of immunities from general taxation. The increasing social burdens assumed by our governments, both State and national, will require increasing and more searching taxation for their support. Any immunity from equal general taxation appears more and more inconvenient and unjust. The recent reexamination of the basis for such immunities has resulted in an upheaval. The current of authority has been turned. For the judicial navigator the cases are no longer the beacons marking out a fixed if tortuous channel. He must for awhile fix his eyes anew upon the Constitution as the pole star of his firmament and steer his course rather by principle than by precedent.

A basic principle is that taxation is vital both to the State and national governments; to be concurrently exercised by both with as little interference as possible by one with the other. Another basic principle is that immunity from taxation ought to be jealously regarded.[1] It is well settled that a total or partial exemption claimed under a private charter or other legislative contract cannot rest on implication, but only on express words which are free from reasonable doubt. An implication of immunity based on constitutional provisions ought to be a necessary implication, and to extend no further than the necessity requires; and this especially when the immunity is invoked not in behalf of a government but of a citizen or private corporation. It is clear also that because a matter is regulable only by one government it is not thereby exempted from just taxation by the other. No one supposes that because intrastate commerce and most other businesses are regulable by the State that the national government may not properly tax them and those engaged in them. Federal taxes were from the beginning placed on liquors and tobacco and the production and the local handling of them. Conversely, the clause

---

[1] The latest unanimous expression from the Supreme Court is United States Trust Co. v. Helvering, April 17, 1939, 305 U. S. ——, 59 S.Ct. 692, 83 L.Ed. ——.

of the federal Constitution vesting exclusive power to regulate interstate and foreign commerce in Congress ought not of itself to exempt such commerce and those who carry it on in a State from a decent and non-discriminatory State taxation. Impairment of the commerce power of Congress really arises only if the State by intention or in actual effect regulates commerce by license or other special taxation, or burdens it unduly so as to impede it; or if the State law imposing the tax conflicts with some regulation made by the Congress in its supreme right. The immunity of interstate commerce from State taxation could have been rested not on an implication from the Commerce Clause, U.S.C.A.Const. Art. 1, § 8, cl. 3, because of possible injury to commerce and on refined distinctions as to the incidence and measure of the tax, but on the express provision that "No State shall without the consent of Congress lay any imposts or duties on imports or exports." U.S.C.A. Const. Art. 1, § 10. This provision could have been applied as well to commerce with another State as with a foreign country, and as well to that carried on by train or truck or pipeline as by ships. When the Constitution was written and in course of adoption each State was foreign to the others. It was assumed in Brown v. Maryland, 12 Wheat. 419, 449, 6 L.Ed. 678, and Almy v. California, 24 How. 169, 16 L.Ed. 644, that the Exports-Imports Clause did apply to interstate commerce, but in Woodruff v. Parham, 8 Wall. 123, 19 L.Ed. 382, it was decided otherwise by a divided court, and a general State tax on auction sales was held good when applied to sales in original packages of interstate imports, since there was no discrimination. These are the ancient constitutional landmarks. The decision in the case of Brown v. Maryland, supra, where the exports-imports prohibition did apply, was that a State tax laid on an importer as such and on his immediate sale of the unaltered import was forbidden. The conclusion was then reinforced by the argument that since Congress by a tariff law had under the Commerce Clause fixed the burdens on importation the State could not without conflict add to them directly. It has since been held that a gross income tax applied to sales of such imports would, in like manner directly reach each transaction and tax it and is therefore forbidden. But these conclusions do not mean that the importer and his fixed capital and vehicles and facilities in the State are not subject to general State taxes, though he and they are engaged in no other business. He must pay general property taxes, and capitation taxes. So a corporate importer ought to pay the taxes justly laid on all corporations, if they do not directly touch and tax the acts of importation or exportation. The same things are true when immunity of interstate commerce from State taxation is spelled out of the Commerce Clause. Thus when using the roads of a State interstate carriers must pay State taxes for the use, just as others do. And interstate carriers and merchants must pay general property taxes for State protection to their property in the State. Now when such property taxes prove insufficient to support the State government which protects their business as well as their property, why should not general taxes in other forms be shared by them, where not expressly prohibited by the Constitution? The State of Mississippi has not taxed this Gas Company on its transportation of gas into or through Mississippi. Whether it transports or not, or transports much or little, does not affect the tax. The tax therefore does not directly affect the transportation. Like a poll tax on men, it is demanded of all business corporations having capital in Mississippi just for being there with their capital. We hold the tax valid and not to be recovered.

On the cross-appeal, the judgment is affirmed. On the main appeal, the judgment is reversed, with direction to enter judgment for the defendant.

Reversed.