289 So.2d 93 (1974)
COLONIAL PIPELINE COMPANY, Plaintiff-Respondent,
v.
E. Lee AGERTON, Collector of Revenue, Defendant-Relator.
No. 53552.
Supreme Court of Louisiana.
January 14, 1974.
Rehearing Denied February 15, 1974.
*94 White M. Cook, II, Baton Rouge, for defendant-relator.
R. Gordon Kean, Jr., John V. Parker, Sanders, Miller, Downing & Kean, Baton Rouge, Charles A. Graham, Atlanta, Ga., for plaintiff-respondent.
CALOGERO, Justice.
We granted this writ, 279 So.2d 201 (La.1973) upon the application of the Louisiana Collector of Revenue, who complains of an adverse decision of the 19th Judicial District Court, affirmed by the First Circuit Court of Appeal, holding that R.S. 47:601 as amended by Act No. 325 of 1970 is unconstitutional as a violation of the Commerce Clause of the United States Constitution.[1]
R.S. 47:601 imposed a corporation franchise tax which the Collector levied on plaintiff-relator, Colonial Pipeline Company, for the years 1970 and 1971. Colonial paid the taxes under protest, then instituted this action for recovery.
The legal issue involved in the matter presently before us is more readily understood by reviewing Colonial's disputes with the Collector of Revenue starting in 1963.
Colonial Pipeline Company is a common carrier of liquefied petroleum products. Its chief physical asset is a pipeline system stretching from Houston, Texas to the outskirts of New York City, a total of some 3,400 miles. Through this line, Colonial pumps approximately one million gallons of petroleum products per day. Of the total pipeline mileage owned by Colonial, approximately 258 are located in the State of Louisiana (in 1963 there were 217 miles of pipeline located in Louisiana.). Over this distance, there are several booster pumping stations which keep the products flowing at a sustained rate, and at various collection points (chiefly Lake Charles and Baton Rouge) there are tank storage facilities. To maintain and help operate this line, Colonial keeps approximately 25-30 employees in the State. These consist of various classifications of mechanics, electricians, and other workers whose chief duties are to inspect the line and perform maintenance chores. There were no administrative offices or personnel in the State during 1970 and 1971, although prior to this time, including the year 1963, Colonial had maintained a Division office in Baton Rouge.
In its operation in Louisiana, Colonial has apparently done no intrastate shipping of petroleum products. Loads or batches are picked up outside the state and deposited within the state, and picked up within the state for transportation elsewhere. There *95 are apparently no facilities in the state, except for those in Lake Charles and Baton Rouge, for injecting or withdrawing products into or from the line.
On May 9, 1962, Colonial, a Delaware corporation with principle offices in Atlanta, Georgia, qualified to do business in Louisiana and has remained qualified since that time.
In 1963 the Collector imposed the Louisiana franchise tax (R.S. 47:601, the latest amendment thereof in 1963 being by Act 437 of 1958) on Colonial's activities for the year 1962. Colonial paid the tax, then successfully prosecuted a lawsuit for a refund. The Court of Appeal in that first lawsuit affirmed a district court judgment favorable to Colonial,[2] holding that Colonial was engaged in interstate commerce, and that the Collector's interpretation of R.S. 47:601 which authorized the imposition of the tax was unconstitutional as a violation of the Commerce Clause of the United States Constitution. This Court refused to grant writs.[3]
Following that 1969 decision the Louisiana Legislature by Act 325 of 1970 amended R.S. 47:601 in an apparent effort to cure any Constitutional deficiency in the statute and to facilitate the legal imposition of Louisiana's corporation franchise tax upon corporations such as Colonial.
There followed a renewed effort to impose the tax, this time under the amended statute.
Prior to the 1970 amendment the statute had read as follows:
R.S. 47:601. Imposition of tax
Every domestic corporation and every foreign corporation, exercising its charter, authorized to do or doing business in this state, or owning or using any part or all of its capital or plant in this state, subject to compliance with all other provisions of law, except as otherwise provided for in this chapter, shall pay a tax at the rate of one dollar and 50/100 ($1.50) for each one thousand dollars ($1,000.00), or major fraction thereof on the amount of its capital stock, surplus, undivided profits, and borrowed capital, determined as hereinafter provided; the minimum tax shall not be less than ten dollars ($10.00) in any case. The tax levied herein is due and payable for the privilege of carrying on or doing business, the exercising of its charter or the continuance of its charter within this state, or owning or using any part or all of its capital or plant in this state. (Emphasis added)
The amendment by Act 325 of 1970 changed the statute to provide as follows:
R.S. 47:601 Imposition of tax
Every domestic corporation and every foreign corporation, exercising its charter, or qualified to do business or actually doing business in this state, or owning or using any part or all of its capital, plant or any other property in this state, subject to compliance with all other provisions of law, except as otherwise provided for in this Chapter shall pay an annual tax at the rate of $1.50 for each $1,000.00, or major fraction thereof on the amount of its capital stock, surplus, undivided profits, and borrowed capital, determined as hereinafter provided; the minimum tax shall not be less than $10.00 per year in any case. The tax levied herein is due and payable on any one or all of the following alternative incidents:

(1) The qualification to carry on or do business in this state or the actual doing of business within this state in a corporate form. The term "doing business" as used herein shall mean and include each and every act, power, right, privilege, or immunity exercised or enjoyed in this state, as an incident to or by virtue of the powers and privileges acquired by the nature of such organizations, *96 as well as, the buying, selling or procuring of services of property.
(2) The exercising of a corporation's charter or the continuance of its charter within this state.

(3) The owning or using any part or all of its capital plant or other property in this state in a corporate capacity.

It being the purpose of this section to require the payment of this tax to the State of Louisiana by domestic corporations for the right granted by the laws of this state to exist as such an organization, and by both domestic and foreign corporations for the enjoyment, under the protection of the laws of this state, of the powers, rights, privileges and immunities derived by reason of the corporate form of existence and operation. The tax hereby imposed shall be in addition to all other taxes levied by any other statute.
As used herein the term "domestic corporation" shall mean and include all corporations, joint stock companies or associations, or other business organizations organized under the laws of this state which have privileges, powers, rights or immunities not possessed by individuals or partnerships. The term "foreign corporation" shall mean and include all such business organizations as hereinbefore described in this paragraph which are organized under the laws of any other state, territory or district, or foreign country. (Emphasis added)
The Court of Appeal, holding as it did in the earlier opinion that the statute (prior to the 1970 amendment) as applied to Colonial's activities within the State violated the commerce clause of the United States Constitution, rested the decision essentially upon its construction that the statute imposed a tax simply upon the privilege of doing business in the State of Louisiana. And, of course, State franchise or excise taxes imposed on a corporation for the privilege of doing exclusively interstate business, as a general rule, are invalid.
Colonial argues, and the Court of Appeal in the case presently before us held, that the 1970 amendment to R.S. 47:601 did not change the operating incidents of the franchise tax, that the statute before and after the amendment in this respect is essentially the same.
We disagree. The amended statute omits the primary operating incident, i. e., "the privilege of carrying on or doing business." And, of course, it was the taxing of the privilege of carrying on or doing business which the Court of Appeal in its earlier decision held was the exclusive thrust of the statute. Additionally the amendment specifies three alternative incidents, one of which, "the doing of business within this state in a corporate form," was not clearly incorporated in the prior statute.
Even if we assume, however, that there has been no essential change in the statute we would still be inclined to hold as we do, notwithstanding the earlier decision of the Court of Appeal to the contrary.
This Court's refusal in 1969 to grant writs upon application by the State in that earlier case, while normally persuasive, does not carry the same weight as a precedent as it would, had that case been decided by this Court after the granting of a writ. See State v. Theard, 212 La. 1022, 34 So.2d 248 (1948); State v. Ardoin, 197 La. 877, 2 So.2d 633 (1941). This Court is not bound by its refusal of writs, to adopt law expressed in appellate court opinions. Garlington v. Kingslev, handed down this day. 289 So.2d 88 (La.1973).
The statute as amended in 1970 imposes a corporation franchise tax upon, pertinently, every foreign corporation (and every domestic corporation as well) exercising its charter, authorized to do or doing business, or owning or using any part or all of its capital or plant, in the State of *97 Louisiana. The tax is due and payable on any one or all of three alternative incidents:
a) doing business in Louisiana in a corporate form
b) the exercising of a corporation's charter or the continuance of its charter within the state and
c) the owning or using any part or all of its capital, plant or other property in Louisiana in a corporate capacity.
The thrust of the statute is to tax not the interstate business done in Louisiana by a foreign corporation, but the doing of business in Louisiana in a corporate form, including
"each and every act, power, right, privilege or immunity exercised or enjoyed in this state, as an incident to or by virtue of the powers and privileges acquired by the nature of such organizations..."
The pertinent Constitutional question is whether, as applied to a corporation whose exclusive business carried on within the State is interstate, this statute violates the Commerce Clause of the United States Constitution.
Memphis Natural Gas Co. v. Stone, 335 U.S. 80, 68 S.Ct. 1475, 92 L.Ed. 1832 (1948), involved facts almost identical to the case at point. There the gas company piped gas across the State of Mississippi. It did no intrastate business in that State. It had no office in that State and no employees other than those necessary to maintain the pipeline. Unlike the case before us Memphis Natural Gas had not qualified to do business in Mississippi. The Mississippi tax statute in question was a franchise or excise tax very similar to our Louisiana statute. The pertinent part of the Mississippi statute provided:
"It being the purpose of this section to require the payment to the state of Mississippi, this tax for the right granted by the laws of this state to exist as such organization, and enjoy, under the protection of the laws of this state, the powers, rights, privileges and immunities derived from the state by the form of such existence."
The Supreme Court of Mississippi concluded the statute did not attempt to tax interstate commerce. That Court said:
"It is to be seen that there is no attempt to tax interstate commerce as such, but the levy is an exaction which the State requires as a recompense for its protection of lawful activities carried on in this State by the corporation, foreign or domestic, activities which are incidental to the powers and privileges possessed by it by the nature of its organizationhere the local activities in maintaining, keeping in repair, and otherwise in manning the facilities of the system throughout the 135 miles of its line in this State." (Emphasis added) 201 Miss. 670, 674, 29 So.2d 268, 270 (1947).
In affirming the Supreme Court of Mississippi, the Supreme Court of the United States said:
"We think that the state is within its constitutional rights in exacting compensation under this statute for the protection it affords the activities within its border. Of course, the interstate commerce could not be conducted without these local activities. But that fact is not conclusive. These are events apart from the flow of commerce. This is a tax on activities for which the state, not the United States, gives protection and the state is entitled to compensation when its tax cannot be said to be an unreasonable burden or a toll on the interstate business." 335 U.S. at 96, 68 S.Ct. at 1483, 92 L.Ed. at 1844 (Emphasis added)
With respect to whether or not the imposition of this tax is an unreasonable burden or toll on interstate business, it is pertinent *98 to note that the Court of Appeal below indicated that R.S. 47:601 imposes a tax upon the total corporate structure of Colonial. It went on to comment that if each State, in which a foreign corporation engaged exclusively in interstate commerce, could impose a franchise tax based on that corporation's total capital stock, surplus, undivided profits and borrowed capital, the tax burden would be such as to literally prevent the corporation's interstate operation.
On the contrary, however, the statute does not impose a tax upon the total corporate structure of Colonial. R.S. 47:606 specifically apportions the capital stock, etc. of any corporation subjected to the franchise tax according to the property and assets situated or used in Louisiana.[4]
Colonial argues that Memphis Natural Gas, supra, is not perfectly analogous and that, at any rate, it is an isolated decision of the United States Supreme Court at odds with the later decision in Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951). Conversely, the Collector argues that Spector does not overrule Memphis Natural Gas either expressly or impliedly and that under any condition Spector is the isolated decision of the United States Supreme Court and that later decisions of that Court, namely, General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964); Railway Express Agency v. Virginia, 358 U.S. 434, 79 S.Ct. 411, 3 L.Ed.2d 450 (1959); Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959), indicate further inroads (even more significant than that involved in Memphis Natural Gas) into the tax immune status of exclusively interstate business activity. It is appropriate therefore that we review those decisions of the United States Supreme Court.
In Spector, there was a State tax or excise upon the franchise of a corporation for the privilege of carrying on or doing business in the State, measured by net income received from business transactions within that State. As imposed upon a foreign corporation doing only interstate business within the State, the tax was held invalid under the Commerce Clause. The Court in Spector said however,
"The State is not precluded from imposing taxes upon other activities or aspects of this business which, unlike the privilege of doing interstate business, are subject to the sovereign power of the State. Those taxes may be imposed although their payment may come out of the funds derived from petitioner's interstate business, provided the taxes are so imposed that their burden will be reasonably related to the power of the State and nondiscriminatory." 340 U.S. at 609, 71 S.Ct. at 512, 95 L.Ed. at 578.
In 1964, the United States Supreme Court in General Motors Corp. v. Washington, supra, validated a State tax upon a foreign corporation's gross wholesale sales of cars, parts and accessories within the State, finding the levy was upon a significant local incident, namely substantial local business activity of the corporation. In General Motors Corp. the Court said the decisive question relative to the operating incident of the tax was "whether the State has exerted its power in proper proportion to appellant's activities within the State and to appellant's consequent enjoyment of the opportunities and protections which the *99 State has afforded." It also stated "the validity of the tax rests upon whether the State is exacting a constitutionally fair demand for that aspect of interstate commerce to which it bears a special relation." 377 U.S. at 441, 84 S.Ct. 1568, 12 L.Ed.2d at 435.
Then in 1959, the Supreme Court decided Northwestern States Portland Cement Co. v. Minnesota, supra, which involved the constitutionality of non-discriminatory state net income tax laws levying taxes on that portion of a foreign corporation's net income earned from and fairly apportioned to business activities within the taxing State, even though such activities were exclusively in furtherance of interstate commerce. The Supreme Court held the statute not constitutionally infirm if the levy is not discriminatory and is properly apportioned to the activity within the taxing state. It found the in-state activities to form "a sufficient `nexus between such a tax and transactions within a state for which the tax is an exaction.'" 358 U.S. at 464, 79 S.Ct. at 365-366, 3 L.Ed.2d at 431. The Supreme Court quoted Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940), "`the controlling question is whether the state has given anything for which it can ask return.'" 358 U.S. at 465, 79 S.Ct. at 366, 3 L.Ed.2d at 431.
In Railway Express Agency v. Virginia, supra, decided the same day as Northwestern States Portland Cement, the Supreme Court held valid a franchise tax in lieu of taxes upon all of its other intangible property and in lieu of property taxes on its rolling stock measured by gross receipts from transportation within Virginia.
We believe that the decisions of the United States Supreme Court following Memphis Natural Gas and Spector, do indeed, as contended by the Collector of Revenue here, indicate inroads into the tax immune status of exclusively interstate activity. This was similarly the opinion of the Supreme Court of the State of New Jersey in the 1967 case of Roadway Express, Inc. v. Director, Division of Taxation, 50 N.J. 471, 236 A.2d 577 (1967). In Roadway Express, in sustaining the imposition of New Jersey's privilege tax upon a corporation conducting exclusively interstate business in the State, the New Jersey Supreme Court suggested that the United States Supreme Court majority opinion in Spector no longer characterized its (the United States Supreme Court's) attitude towards State taxation of interstate commerce and that Spector "remains authority at the very most, only in the precise statutory situation there found." 50 N.J. at 487, 236 A.2d at 585.
While the New Jersey court did sustain the tax because it was, unlike the case here before us, in lieu of all other State, County or local taxation upon or measured by intangible personal property,[5] the New Jersey Court went on further to conclude that the tax was additionally sustainable as a levy "`for the privilege of * * * employing or owning capital or property, or maintaining an office, in this State,'" and also for "`the privilege of * * * exercising its corporate franchise'" in the State of New Jersey. That Court concluded that such privileges are sufficiently different from that of "doing" interstate business such that they are aspects of business subject to the sovereign power of the State. 50 N.J. at 492, 236 A.2d at 588.
Appeal of Roadway Express from the Supreme Court of New Jersey was dismissed by the United States Supreme Court "for lack of a substantial Federal question." 390 U.S. 745, 20 L.Ed.2d 276, 88 S.Ct. 1443 (1968).
While the Supreme Court's dismissal of Roadway's appeal for lack of a substantial question may have been affected by the in *100 lieu feature of the tax there involved, the major significance of the New Jersey decision "lies in its direct attack on tax immunity derived from the privilege of doing interstate business,"[6] particularly in its validating the imposition of an excise tax upon the privilege of exercising a corporate franchise, owning property, employing capital, and maintaining an office in a given state.
In a case the result of which was similar to that expressed in this opinion, the Tennessee Supreme Court in Texas Gas Transmission Corp. v. Atkins, 197 Tenn. 123, 270 S.W.2d 384, cert. denied, 348 U.S. 883, 75 S.Ct. 125, 99 L.Ed. 694 (1954), held that despite the Supreme Court's proscription in Spector of a levy on the right to do interstate business, taxing the right to do business (even though exclusively interstate) in corporate form, not involved in Spector, was Constitutionally permissible. In that case, as in this decision, State excise and franchise taxes were held valid as applied to a foreign corporation engaged exclusively in the interstate transportation of gas by pipeline through Tennessee. See also Mid Valley Pipeline Co. v. King, 221 Tenn. 724, 431 S.W.2d 277 (1968), appeal dismissed for lack of a substantial question, 393 U.S. 321, 89 S.Ct. 556, 21 L.Ed.2d 517 (1969).
Louisiana's corporation franchise tax statute, as amended by Act 325 of 1970, and as applied to foreign corporations doing only interstate business in Louisiana, taxes not the general privilege of doing interstate business but simply the corporation's privilege of enjoying in a corporate capacity the ownership or use of its capital, plant or other property in this state, the corporation's privilege of exercising and continuing its corporate charter in the State of Louisiana, and the corporation's use of its corporate form to do business in the State.
The corporation, including the foreign corporation doing only interstate business in Louisiana, enjoys under our laws many privileges separate and apart from simply doing business, such for instance as the legal status to sue and be sued in the Courts of our State, continuity of business without interruption by death or dissolution, transfer of property interests by the disposition of shares of stock, advantages of business controlled and managed by corporate directors, and the general absence of individual liability, among others.
That the corporation enjoys power and privilege not possessed by individuals or partnerships was long ago recognized by this Court. Conway v. Lane Cotton Mills Co., 178 La. 626, 152 So. 312 (1933).
The fact that the corporate form of doing business is inextricably interwoven in a foreign corporation's doing interstate business in the State, does not in our view detract from the fact that the local incident taxed is the form of doing business rather than the business done by that corporation. And it is our view that the local incident is real and sufficiently distinguishable, so that taxation thereof does not, under the controlling decisions of the United States Supreme Court, violate the Commerce Clause.
The statute does not discriminate between foreign and local corporations, being applicable, as it is, to both. Nor do we believe that the State's exercise of its power by this taxing statute is out of proportion to Colonial's activities within the state and their consequent enjoyment of the opportunities and protection which the state has afforded them.
Furthermore we believe that the State has given something for which it can ask return. The return, tax levy in this case, is an exaction which the State of Louisiana requires as a recompense for its protection *101 of lawful activities carried on in this state by Colonial, activities which are incidental to the powers and privileges possessed by it by the nature of its organization, here, as in Memphis Natural Gas, the local activities in maintaining, keeping in repair, and otherwise in manning the facilities of their pipeline system throughout the 258 miles of its pipeline in the State of Louisiana.
We therefore find R.S. 47:601 et seq. to be a Constitutional exercise of the State of Louisiana's taxing power not unconstitutional under the Commerce Clause of the Federal Constitution.
Having reached this conclusion we turn now to Colonial's alternative plea, that in any event their tax obligation for the calendar year 1970 be limited to $10.00.
L.R.S. 47:611, reads as follows:
"Every corporation shall pay only the minimum tax of ten dollars ($10.00) in the first accounting period or fraction thereof in which it becomes subject to the tax levied herein."
Under the 1970 amendment, the tax became effective for all taxable years beginning on or after December 31, 1969. Therefore, the first year that Colonial became subject to the tax under the statute was 1970, and could owe no greater tax during that year than the amount set forth in L.R.S. 47:611, above.
Colonial is correct in this position. The Collector of Revenue so concedes.
The corporation franchise tax paid by Colonial, recovery of which is sought in this litigation was:
For 1970, including interest to date of payment, $80,835.02
For 1971, including interest to date of payment, $69,884.78.
Inasmuch as Colonial is entitled to recover all but $10.00 of the sum paid for 1970, and inasmuch as we hold the tax valid and applicable for the year 1971, we are required to amend the judgment of the Court of Appeal.
Accordingly, for the foregoing reasons, the judgment of the Court of Appeal insofar as it held L.R.S. 47:601 as amended by Act No. 325 of 1970 unconstitutional is reversed, and the judgment in favor of Colonial Pipeline Co. and against the Collector of Revenue, State of Louisiana is otherwise amended to reduce the principal amount thereof from $150,719.80 to $80,825.02; in other particulars judgment is affirmed.
Judgment reversed in part, amended in part and affirmed.
NOTES
[1] U.S.Const. art. 1, § 8, cl. 3.
[2] Colonial Pipeline Co. v. Mouton, 228 So.2d 718 (La.App.1st Cir. 1969).
[3] 255 La. 474, 231 So.2d 393 (1970).
[4] R.S. 47:606 Allocation of taxable capital A. General allocation formula.

For the purpose of ascertaining the tax imposed in this Chapter, every corporation subject to the tax is deemed to have employed in this state the proportion of its entire issued and outstanding capital stock, surplus, undivided profits and borrowed capital, computed on the basis of the ratio obtained by taking the arithmetical average of the following ratios:
(1) ...
(2) The ratio that the value of all of the taxpayer's property and assets situated or used in Louisiana bears to the value of all of its property and assets wherever situated or used ....
[5] And, of course, such an "in lieu" tax had specifically been sanctioned by the U.S. Supreme Court in Railway Express Agency v. Virginia, 358 U.S. 434, 79 S.Ct. 411, 3 L.Ed. 2d 450 (1959).
[6] Hellerstein, State Taxation of Interstate Commerce: Roadway Express, the Diminishing Privilege Tax Immunity, and the Movement Toward Uniformity in Apportionment, 36 U.Chi.L.Rev. 186, 195 (1968).