## COLONIAL PIPELINE CO. *v.* TRAIGLE, COLLECTOR OF REVENUE OF LOUISIANA

No. 73-1595.   Argued January 13, 1975—Decided April 28, 1975

Brennan, J., delivered the opinion of the Court, in which Burger, C. J., and White, Marshall, and Powell, JJ., joined. Blackmun, J., filed an opinion concurring in the judgment, in which Rehnquist, J., joined, *post,* p. 114. Stewart, J., filed a dissenting opinion, *post,* p. 116. Douglas, J., took no part in the consideration or decision of the case.

*R. Gordon Kean, Jr.,* argued the cause for appellant. With him on the briefs was *John V. Parker.*

*Whit M. Cook II* argued the cause for appellee *pro hac vice.* With him on the brief was *Chapman L. Sanford.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

We have once again a case that presents "the perennial problem of the validity of a state tax for the privilege of carrying on, within a state, certain activities" related to a corporation's operation of an interstate business. *Memphis Gas Co.* v. *Stone*, 335 U. S. 80, 85 (1948).[1] The issue is whether Louisiana, consistent with the Commerce Clause, Art. I, § 8, cl. 3, may impose a fairly apportioned and nondiscriminatory corporation franchise tax on appellant, Colonial Pipeline Co., a corporation engaged exclusively in interstate business, upon the "incident" of its "qualification to carry on or do business in this state or the actual doing of business within this state in a corporate form." No question is raised as to the reasonableness of the apportionment of appellant's capital deemed to have been employed in Louisiana, and it is not claimed that the tax is discriminatory. The Supreme Court of Louisiana sustained the validity of the tax. 289 So. 2d 93 (1974). We noted probable jurisdiction, 417 U. S. 966 (1974). We affirm.

I

Appellant is a Delaware corporation with its principal place of business in Atlanta, Ga. It is a common carrier of liquefied petroleum products and owns and operates a pipeline system extending from Houston, Tex., to the New York City area. This 3,400-mile pipeline links the oil refining complexes of Texas and Louisiana with the population centers of the Southeast and

---

[1] "This Court alone has handed down some three hundred full-dress opinions spread through slightly more than that number of our reports. . . . [T]he decisions have been 'not always clear . . . consistent or reconcilable.'" *Northwestern Cement Co.* v. *Minnesota*, 358 U. S. 450, 457–458 (1959).

Northeast. Appellant daily delivers more than one million gallons of petroleum products to 14 States and the District of Columbia. Approximately 258 miles of the pipeline are located in Louisiana. Over this distance within Louisiana, appellant owns and operates several pumping stations which keep the petroleum products flowing at a sustained rate, and various tank storage facilities used to inject or withdraw petroleum products into or from the line. A work force of 25 to 30 employees—mechanics, electricians, and other workers—inspect and maintain the line within the State. During the tax years in question, 1970 and 1971, appellant maintained no administrative offices or personnel in Louisiana, although it had once maintained a division office in Baton Rouge. Appellant does no intrastate business in petroleum products in Louisiana.

On May 9, 1962, appellant voluntarily qualified to do business in Louisiana, although it could have carried on its interstate business without doing so. La. Rev. Stat. Ann. § 12:302 H (1969); see n. 8, *infra.* Thereupon, the Collector of Revenue imposed the Louisiana franchise tax on appellant's activities in the State during 1962. At that time La. Rev. Stat. Ann. § 47:601, the Louisiana Franchise Tax Act, expressly provided: "The tax levied herein is due and payable for *the privilege of carrying on or doing business,* the exercising of its charter or the continuance of its charter within this state, or owning or using any part or all of its capital or plant in this state." [2] (Emphasis supplied.)

---

[2] Louisiana Rev. Stat. Ann. § 47:601 provided in 1963:

"Every domestic corporation and every foreign corporation, exercising its charter, authorized to do or doing business in this state, or owning or using any part or all of its capital or plant in this state, subject to compliance with all other provisions of law, except as otherwise provided for in this chapter, shall pay a tax at the rate

Appellant paid the tax and sued for a refund. The Louisiana Court of Appeal, First Circuit, held that, in that form, § 601 was unconstitutional as applied to appellant because, being imposed directly upon "the privilege of carrying on or doing [interstate] business," it violated the Commerce Clause, Art. I, § 8, cl. 3. *Colonial Pipeline Co.* v. *Mouton,* 228 So. 2d 718 (1969). The Supreme Court of Louisiana refused review. 255 La. 474, 231 So. 2d 393 (1970).[3]

Following this decision, the Louisiana Legislature amended La. Rev. Stat. Ann. § 47:601 by Act 325 of 1970. The amendment excised from § 601 the words: "The tax levied herein is due and payable for the privilege of carrying on or doing business," and substituted: "The qualification to carry on or do business in this state or the actual doing of business within this state in a corporate form," as one of three "alternative incidents" upon which the tax might be imposed. The other two "incidents"— the exercise of the corporate charter in the State, and the employment there of its capital, plant, or other property—

of one dollar and 50/100 ($1.50) for each one thousand dollars ($1,000.00), or major fraction thereof on the amount of its capital stock, surplus, undivided profits, and borrowed capital, determined as hereinafter provided; the minimum tax shall not be less than ten dollars ($10.00) in any case. The tax levied herein is due and payable for the privilege of carrying on or doing business, the exercising of its charter or the continuance of its charter within this state, or owning or using any part or all of its capital or plant in this state."

[3] Refusal of review was not tantamount to an affirmance. The Louisiana Supreme Court stated in its opinion in the instant case: "This Court's refusal in 1969 to grant writs upon application by the State in that earlier case, while normally persuasive, does not carry the same weight as a precedent as it would, had that case been decided by this Court after the granting of a writ. . . . This Court is not bound by its refusal of writs, to adopt law expressed in appellate court opinions." 289 So. 2d 93, 96 (1974).

were carried forward from the earlier version of the statute.[4] See n. 2, *supra*.

The Collector of Revenue then renewed his efforts to impose a tax on appellant, this time for doing business "in a corporate form" during 1970 and 1971. Again, appellant paid the tax and sued for a refund. The Louisiana District Court and the Court of Appeal, First Circuit, concluded that the 1970 amendment made no substan-

---

[4] Section 601 (Supp. 1975) provides in pertinent part:

"§ 601. Imposition of tax

"Every domestic corporation and every foreign corporation, exercising its charter, or qualified to do business or actually doing business in this state, or owning or using any part or all of its capital, plant or any other property in this state, subject to compliance with all other provisions of law, except as otherwise provided for in this Chapter shall pay an annual tax at the rate of $1.50 for each $1,000.00, or major fraction thereof on the amount of its capital stock, surplus, undivided profits, and borrowed capital, determined as hereinafter provided; the minimum tax shall not be less than $10.00 per year in any case. The tax levied herein is due and payable on any one or all of the following alternative incidents:

"(1) The qualification to carry on or do business in this state or the actual doing of business within this state in a corporate form. The term 'doing business' as used herein shall mean and include each and every act, power, right, privilege, or immunity exercised or enjoyed in this state, as an incident to or by virtue of the powers and privileges acquired by the nature of such organizations, as well as, the buying, selling or procuring of services or property.

"(2) The exercising of a corporation's charter or the continuance of its charter within this state.

"(3) The owning or using any part or all of its capital, plant or other property in this state in a corporate capacity.

"It being the purpose of this section to require the payment of this tax to the State of Louisiana by domestic corporations for the right granted by the laws of this state to exist as such an organization, and by both domestic and foreign corporations for the enjoyment, under the protection of the laws of this state, of the powers, rights, privileges and immunities derived by reason of the corporate form of existence and operation. The tax hereby imposed shall be in addition to all other taxes levied by any other statute."

tive change in § 601, which it construed as still imposing the tax directly upon the privilege of carrying on or doing an interstate business, and held that amended § 601 was therefore unconstitutional as applied to appellant. 275 So. 2d 834 (1973).

The Supreme Court of Louisiana reversed. The court recognized that "[t]he pertinent Constitutional question is whether, as applied to a corporation whose exclusive business carried on within the State is interstate, this statute violates the Commerce Clause of the United States Constitution." 289 So. 2d, at 97. But the court attached controlling significance to the omission from the amended statute of the "primary operating incident [of the former version], i. e., 'the privilege of carrying on or doing business,' " *id.*, at 96, and the substitution for that incident of doing business in the corporate form. The court held: "The thrust of the [amended] statute is to tax not the interstate business done in Louisiana by a foreign corporation, but the doing of business in Louisiana in a corporate form, including 'each and every act, power, right, privilege or immunity exercised or enjoyed in this state, as an incident to or by virtue of the powers and privileges acquired by the nature of such organizations . . . .' " *Id.*, at 97. Accordingly, the court concluded that amended § 601 applied the franchise tax to foreign corporations doing only an interstate business in Louisiana not as a tax upon "the general privilege of doing interstate business but simply [as a tax upon] the corporation's privilege of enjoying in a corporate capacity the ownership or use of its capital, plant or other property in this state, the corporation's privilege of exercising and continuing its corporate character in the State of Louisiana, and the corporation's use of its corporate form to do business in the State." *Id.*, at 100. Upon that premise, the court validated the levy as a

constitutional exaction for privileges enjoyed by corporations in Louisiana and for benefits furnished by the State to enterprises carrying on business, interstate or local, in the corporate form, whether as domestic or foreign corporations. The court reasoned:

"The corporation, including the foreign corporation doing only interstate business in Louisiana, enjoys under our laws many privileges separate and apart from simply doing business, such for instance as the legal status to sue and be sued in the Courts of our State, continuity of business without interruption by death or dissolution, transfer of property interests by the disposition of shares of stock, advantages of business controlled and managed by corporate directors, and the general absence of individual liability, among others.

.    .    .    .    .

"The fact that the corporate form of doing business is inextricably interwoven in a foreign corporation's doing interstate business in the State, does not in our view detract from the fact that the local incident taxed is the *form of doing business* rather than the business done by that corporation. And it is our view that the local incident is real and sufficiently distinguishable, so that taxation thereof does not, under the controlling decisions of the United States Supreme Court, violate the Commerce Clause.

"The statute does not discriminate between foreign and local corporations, being applicable, as it is, to both. Nor do we believe that the State's exercise of its power by this taxing statute is out of proportion to Colonial's activities within the state and their consequent enjoyment of the opportunities and protection which the state has afforded them.

"Furthermore we believe that the State has given

something for which it can ask return. The return, tax levy in this case, is an exaction which the State of Louisiana requires as a recompense for its protection of lawful activities carried on in this state by Colonial, activities which are incidental to the powers and privileges possessed by it by the nature of its organization, here, . . . the local activities in maintaining, keeping in repair, and otherwise in manning the facilities of their pipeline system throughout the 258 miles of its pipeline in the State of Louisiana." *Id.*, at 100–101.[5]

This Court is, of course, not bound by the state court's determination that the challenged tax is not a tax on interstate commerce. "The State may determine for

[5] The taxes levied against appellant for 1970 were $80,835.02 including interest and for 1971 were $69,884.78 including interest. These amounts were fixed by applying the $1.50 rate to an allocated figure computed according to a general allocation formula provided in La. Rev. Stat. Ann. § 47:606 as follows:

"A. General allocation formula.

"For the purpose of ascertaining the tax imposed in this Chapter, every corporation subject to the tax is deemed to have employed in this state the proportion of its entire issued and outstanding capital stock, surplus, undivided profits and borrowed capital, computed on the basis of the ratio obtained by taking the arithmetical average of the following ratios:

"(1) . . . .

"(2) The ratio that the value of all of the taxpayer's property and assets situated or used in Louisiana bears to the value of all of its property and assets wherever situated or used. . . ."

The State Supreme Court found that appellant was liable only for the minimum amount specified in amended § 601 for 1970 and reduced the tax for that year to $10. The levy for 1971 was sustained in the full amount, 289 So. 2d, at 101.

Appellant also pays ad valorem taxes to Louisiana and 10 of its parishes, as well as state income taxes. For the years 1970 and 1971, ad valorem taxes totaled $743,561.34 and income taxes totaled $196,621.

itself the operating incidence of its tax. But it is for this Court to determine whether the tax, as construed by the highest court of the State, is or is not 'a tax on interstate commerce.'" *Memphis Steam Laundry* v. *Stone,* 342 U. S. 389, 392 (1952). We therefore turn to the question whether the tax imposed upon appellant under amended § 601, as construed by the Louisiana Supreme Court, is or is not a tax on interstate commerce.

II

It is a truism that the mere act of carrying on business in interstate commerce does not exempt a corporation from state taxation. "It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business." *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 254 (1938). Accordingly, decisions of this Court, particularly during recent decades, have sustained nondiscriminatory, properly apportioned state corporate taxes upon foreign corporations doing an exclusively interstate business when the tax is related to a corporation's local activities and the State has provided benefits and protections for those activities for which it is justified in asking a fair and reasonable return.[6] *General Motors Corp.* v. *Washington,* 377 U. S. 436 (1964); *Memphis Gas Co.* v. *Stone,* 335 U. S. 80 (1948). Cf. *Spector Motor Service* v. *O'Connor,* 340 U. S. 602 (1951). *General Motors Corp., supra,* states the controlling test:

"[T]he validity of the tax rests upon whether the

---

[6] "A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society." *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 444 (1940).

State is exacting a constitutionally fair demand for that aspect of interstate commerce to which it bears a special relation. For our purposes the decisive issue turns on the operating incidence of the tax. In other words, the question is whether the State has exerted its power in proper proportion to appellant's activities within the State and to appellant's consequent enjoyment of the opportunities and protections which the State has afforded. . . . As was said in *Wisconsin* v. *J. C. Penney Co.*, 311 U. S. 435, 444 (1940), '[t]he simple but controlling question is whether the state has given anything for which it can ask return.' " 377 U. S., at 440–441.

Amended § 601 as applied to appellant satisfies this test. First, the Supreme Court of Louisiana held that the operating incidences of the franchise tax are the three localized alternative incidences provided in § 601: (1) doing business in Louisiana in the corporate form; (2) the exercise of a corporation's charter or the continuance of its charter within the State; and (3) the owning or using any part of its capital, plant, or other property in Louisiana in a corporate capacity. We necessarily accept this construction of amended § 601 by Louisiana's highest court. 289 So. 2d, at 97. Second, the court found that the powers, privileges, and benefits Louisiana bestows incident to these activities were sufficient to support a tax on doing business in the corporate form in that State. We perceive no basis upon which we can say that this is not in fact the case. Our pertinent precedents therefore require affirmance of the State Supreme Court's judgment.

*Memphis Gas Co.* v. *Stone, supra*, sustained a similar franchise tax imposed by Mississippi on a foreign pipeline corporation engaged exclusively in an interstate business even though the company had not qualified in Mississippi.

Memphis Natural Gas Co., a Delaware corporation, owned and operated a natural gas pipeline extending from Louisiana, through Arkansas and Mississippi, to Memphis and other parts of Tennessee. Approximately 135 miles of the pipeline were located in Mississippi, and two of the corporation's compressing stations were located in that State. The corporation engaged in no intrastate commerce in Mississippi, and had only one customer there. It had not qualified under the corporation laws of Mississippi. It had neither an agent for the service of process nor an office in that State, and its only employees there were those necessary for the maintenance of the pipeline.

The corporation paid all ad valorem taxes assessed against its property in Mississippi. In addition to these taxes, however, Mississippi imposed a "franchise or excise tax" upon all corporations "doing business" within the State. The statute defined "doing business" in terms that suggest it may have been the model for § 601, that is, "[to] mean and [to] include each and every act, power or privilege exercised or enjoyed in this State, as an incident to, or by virtue of the powers and privileges acquired by the nature of such organization." 335 U. S., at 82.[7] The Supreme Court of Mississippi held, as did the Supreme Court of Louisiana here, 289 So. 2d, at 101, that the tax was " 'an exaction . . . as a recompense for . . . protection of . . . the local activities in maintaining, keeping in repair, and otherwise manning the facilities of the system throughout the 135 miles of its line in this State.' "

---

. [7] Like § 601, the Mississippi statute, Code Ann. § 9313 (1943), provided in part:

"It being the purpose of this section to require the payment to the state of Mississippi, this tax for the right granted by the laws of this state to exist as such organization, and enjoy, under the protection of the laws of this state, the powers, rights, privileges and immunities derived from the state by the form of such existence."

335 U. S., at 84.   In affirming the judgment of that court, Mr. Justice Reed, in a plurality opinion, said:

> "We think that the state is within its constitutional rights in exacting compensation under this statute for the protection it affords the activities within its borders.   Of course, the interstate commerce could not be conducted without these local activities.   But that fact is not conclusive.   These are events apart from the flow of commerce.   This is a tax on activities for which the state, not the United States, gives protection and the state is entitled to compensation when its tax cannot be said to be an unreasonable burden or a toll on the interstate business." *Id.,* at 96.

This conclusion is even more compelled in the instant case since appellant voluntarily qualified under Louisiana law and therefore enjoys the same rights and privileges as a domestic corporation.   La. Rev. Stat. Ann. § 12:306 (2) (Supp. 1975).[8]   The Louisiana Supreme Court de-

---

[8] Louisiana does not require foreign corporations to qualify as a condition to carrying on their interstate business.   Louisiana Rev. Stat. Ann. § 12:302 (Supp. 1975) expressly exempts foreign corporations that transact "any business in interstate or foreign commerce" from its requirement that foreign corporations obtain a certificate of authority from the Secretary of State before they transact business within the State.   *Crutcher* v. *Kentucky,* 141 U. S. 47 (1891), therefore, is inapposite.   There Kentucky provided that an agent of an express company not incorporated under the laws of Kentucky could not carry on business in that State without first obtaining a license from the State.   The Court held that this mandatory license requirement was unconstitutional because to "carry on interstate commerce is not a franchise or a privilege granted by the State . . . . We have repeatedly decided that a state law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it." *Id.,* at 57–58.   See *Graham Mfg. Co.* v. *Rolland,* 191 La. 757, 186 So. 93 (1939); *State* v. *American Railway Express Co.,*

fined appellant's powers and privileges as including "the legal status to sue and be sued in the Courts of our State, continuity of business without interruption by death or dissolution, transfer of property interests by the disposition of shares of stock, advantages of business controlled and managed by corporate directors, and the general absence of individual liability . . . ." 289 So. 2d, at 100. These privileges obviously enhance the value to appellant of its activities within Louisiana. See *Southern Gas Corp.* v. *Alabama,* 301 U. S. 148, 153 (1937); *Stone* v. *Interstate Natural Gas Co.,* 103 F. 2d 544 (CA5), aff'd, 308 U. S. 522 (1939). Cf. *Railway Express Agency* v. *Virginia (Railway Express II),* 358 U. S. 434 (1959).

## III

Nevertheless, appellant contends that *Spector Motor Service* v. *O'Connor,* 340 U. S. 602 (1951), and *Railway Express Agency* v. *Virginia (Railway Express I),* 347 U. S. 359 (1954), require the conclusion that § 601 is unconstitutional as applied to appellant. The argument is without merit. *Spector* held invalid under the Commerce Clause a Connecticut tax based expressly "upon [the corporation's] franchise for the privilege of carrying on or doing business within the state . . . ." Similarly, *Railway Express I* invalidated Virginia's "annual license tax" imposed on express companies expressly "for the privilege of doing business" in the State. Thus both taxes, as express imposts upon the privilege of carrying on an exclusively interstate business, contained the same fatal constitutional flaw that led the Louisiana Court of Appeal to strike down the levy against appel-

---

159 La. 1001, 106 So. 544 (1924). An important consequence of qualification, of course, is the facilitation of the assessment and collection of state franchise taxes. Comment, Foreign Corporations— State Boundaries for National Business, 59 Yale L. J. 737, 746 (1950).

lant under § 601 before its amendment in 1970. "A tax is [an unconstitutional] direct burden, if laid upon the operation or act of interstate commerce." *Ozark Pipe Line* v. *Monier*, 266 U. S. 555, 569 (1925) (Brandeis, J., dissenting). The 1970 amendment however repealed that unconstitutional basis for the tax, and made § 601 constitutional by limiting its application to operating incidences of activities within Louisiana for which the State affords privileges and protections that constitutionally entitle Louisiana to exact a fairly apportioned and nondiscriminatory tax. *Spector* expressly recognized: "The incidence of the tax provides the answer. . The State is not precluded from imposing taxes upon other activities or aspects of this business which, unlike the privilege of doing interstate business, are subject to the sovereign power of the State." 340 U. S., at 608–609.[9]

Of course, an otherwise unconstitutional tax is not made the less so by masking it in words cloaking its actual thrust. *Railway Express II*, *supra*, at 441; *Railway Express I*, *supra*, at 363; *Galveston, H & S. A. R. Co.* v. *Texas*, 210 U. S. 217, 227 (1908). "It is not a matter of labels." *Spector*, *supra*, at 608. Here, however, the Louisiana Legislature amended § 601 purposefully to remove any basis of a levy upon the privilege of carrying on an interstate business and narrowly to confine

---

[9] Nor is this tax on carrying on business in the corporate form a "local obstruction to the flow of interstate commerce that cannot stand under the Commerce Clause." *Memphis Steam Laundry* v. *Stone*, 342 U. S. 389, 395 (1952). Unlike the situation in *Memphis Steam Laundry*, Louisiana did not "carve out" an "incident from the integral economic process of interstate commerce," *id.*, at 393, and then proceed to tax that incident. There was and is no requirement that appellant assume the corporate form to do interstate business in Louisiana, and indeed state law specifically exempts foreign corporations engaging in interstate commerce from the certificate requirement. See n. 8, *supra*.

the impost to one related to appellant's activities within the State in the corporate form. Since appellant, a foreign corporation qualified to carry on its business in corporate form, and doing business in Louisiana in the corporate form, thereby gained benefits and protections from Louisiana of value and importance to its business, the application of that State's fairly apportioned and nondiscriminatory levy to appellant does not offend the Commerce Clause. The tax cannot be said to be imposed upon appellant merely or solely for the privilege of doing interstate business in Louisiana. It is, rather, a fairly apportioned and nondiscriminatory means of requiring appellant to pay its just share of the cost of state government upon which appellant necessarily relies and by which it is furnished protection and benefits.

*Affirmed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE REHNQUIST joins, concurring in the judgment.

I share the misgivings that are suggested by MR. JUSTICE STEWART in his dissent, but I join the judgment of the Court.

I am not at all satisfied that this Court's decisions of the past 30 years, some of them by sharply divided votes, are so plain and so analytically consistent as the Court's opinion would seem to imply. Thus, I find it difficult to reconcile *Spector Motor Service* v. *O'Connor*, 340 U. S. 602 (1951), with today's holding. And if the present case had gone the other way, I would find it difficult to reconcile the judgment with *Memphis Gas Co.* v. *Stone*, 335 U. S. 80 (1948). If, however, the Court's decisions of the past are consistent—and if there is consistency between what the Louisiana Legislature and that

State's courts have done in Colonial's 1969 case and in the present one—then, for me, the legal distinctions this Court and the Louisiana courts (under the compulsion of our decisions) have drawn are too finespun and far too gossamer. They fail to provide what taxpayers and the lawyers who advise them have a right to expect, namely, a firm and solid basis of differentiation between that which runs afoul of the Commerce Clause, and that which is consistent with that Clause. It makes little constitutional sense—and certainly no practical sense—to say that a State may not impose a fairly apportioned, nondiscriminatory franchise tax with an adequate nexus upon the conduct of business in interstate commerce, but that it may impose that same tax upon the conduct of business in interstate commerce "in a corporate form" or, for that matter, in partnership or individual form. Tr. of Oral Arg. 28–31. Certainly to the lay mind, or to any mind other than the purely legal, these are distinctions with little substantive difference and this is taxation by semantics.

I therefore feel that the Court should face the issue and make the choice. I would make that choice in favor of *Memphis Gas,* as buttressed by the philosophy and holding of *Northwestern Cement Co.* v. *Minnesota,* 358 U. S. 450 (1959), and against *Spector. Spector,* it seems to me, is a derelict and an aberration, and I would discard it. I would hold that in this day, when the realities of "Our Federalism" * have become apparent, and when the ability of our States and of the Federal Government to coexist have matured, a state franchise tax that does not threaten interstate commerce by being discriminatory, or unfairly apportioned, or devoid of sufficient nexus, passes constitutional muster under the Commerce Clause and may be imposed in the

---

*Younger* v. *Harris,* 401 U. S. 37, 44 (1971).

absence of congressional proscription. On this record, Louisiana's corporation franchise tax meets that standard.

MR. JUSTICE STEWART, dissenting.

All agree that the appellant is engaged *exclusively* in interstate commerce. Yet the Court says that Louisiana can nonetheless impose this franchise tax upon the appellant because it is for the privilege of engaging in interstate commerce "in [the] corporate form." * Under this reasoning, the State could impose a like franchise tax for the privilege of carrying on an exclusively interstate business "in the partnership form"—or, for that matter, in the form of an individual proprietorship. For, whatever its form, the exclusively interstate business would still be "owning or using [a] part of its capital, plant or other property in Louisiana," *ante,* at 109, and would still be "furnished" equivalent "protection and benefits" by the State, *ante,* at 114.

The fact is that Louisiana has imposed a franchise tax upon the appellant for the privilege of carrying on an exclusively interstate business. Under our established precedents, such a tax is constitutionally impermissible. *Spector Motor Service* v. *O'Connor,* 340 U. S. 602; *Railway Express Agency* v. *Virginia,* 347 U. S. 359. I could understand if the Court today were forthrightly to overrule these precedents and hold that a state franchise tax upon interstate commerce is constitutionally valid, so long as it is not discriminatory. But I cannot understand how the Court can embrace the wholly specious reasoning of the Supreme Court of Louisiana in this case.

---

*The appellant is not, of course, incorporated in Louisiana.