WELCH, J.
1 aThe plaintiffs/appellants, Calvin Hill, et al, (“plaintiffs”)[1] appeal a trial court judg- *558 merit denying their motion for new trial from a judgment sustaining a peremptory exception raising the objection of prescription filed by the defendant/appellee, Raymond J. Lasseigne (“Lasseigne”) and defendant, TMR Exploration, Inc. (“TMR”). The trial court’s action resulted in the dismissal of the plaintiffs’ claims against Lasseigne with prejudice. For the reasons that follow, we reverse the judgment of the trial court.
FACTUAL BACKGROUÑD
This matter involves a claim for subsurface trespass. The plaintiffs are the owners of various undivided interests in a 22.768 acre tract of immovable property more particularly'described as being located in the North 1/3 of Lot 5, Section 93, Township 7 'South, Range 10 East, Parish of West Baton Rouge (“plaintiffs’ property”). The plaintiffs all trace their ownership interests to the Successions of Peter Hill and Elnora Johnson Hill. In May of 2007, the Louisiana Commissioner of Conservation (“Commissioner”) granted TMR, a Texas corporation, a permit to drill 'for the minerals in Section 93, Township 7 South, Range 10 East. The plaintiffs alleged that TMR’s permit application erroneously identified “A. Wilbert’s Sons, LLC” as the sole owners of all property located in Section 93, Township 7 South, Range 10 East, thus, failing to acknowledge the plaintiffs’ ownership interests in the section.
|aThe plaintiffs further alleged that TMR filed an amended permit with the Commissioner in June of 2007, identifying the proposed bottom of the hole at certain proposed coordinates. On May 18, 2007, a permit to drill the well designated as the “A. Wilbert’s Sons, LLC, 93 No. 1” was issued, and the well began production in January of 2008. According to the plaintiffs, TMR intended to drill directionally to the proposed coordinates; however, ultimately the bottom of the hole of the well was completed at a location. underneath the plaintiffs’ property without their knowledge or permission.[2]
TMR operated the well until July 1, 2010, and following the issuance of an amended permit to drill by the Commissioner, Park Exploration, Inc. (“Park”) was designated as the second operator of the well. Park, in turn, operated the well until an amended permit, effective December 1, 2012, was issued by the Commissioner designating Vitol Resources, Inc. (“Vitol”) as the third operator of the well. The plaintiffs allege that TMR and the two successor operators produced and sold the minerals drained from underneath the plaintiffs’ property from the well without the plaintiffs’ knowledge or permission. ,
The plaintiffs contend that since the bottom of the well was directionally drilled and is located approximately two miles underneath the plaintiffs’ property there is no indication of its presence from the surface of the plaintiffs’ property. The plain *559 tiffs allege that these factors prevented them from learning of the presence of the bottom hole of the well underneath their property until December 19, 2013, when their attorney was informed of the situation by a surveyor.
LThe plaintiffs filed their original petition on February 4, 2014. TMR, Park, and Vitol were named as the sole defendants in the original petition. On July 10, 2014, the plaintiffs filed a First Supplemental and Amending Petition, which named Raymond J. Lasseigne, the president of TMR, as an individual defendant. The plaintiffs subsequently filed several supplemental and amending petitions, adding more parties, as well as modifying and amending their claims.[3]
At issue in the instant appeal are allegations against Lasseigne in the plaintiffs’ Second Supplemental and Amending Petition filed on December 28, 2014, alleging various acts and omissions by Lasseigne. The plaintiffs alleged that Lasseigne acting within the course and scope of his employment, directed and/or coordinated the operations of TMR, including the employees of TMR, in connection with the drilling and production of the minerals from underneath plaintiffs’ property. Further, the plaintiffs alleged that Lasseigne “knew” of the plaintiffs’ ownership interests in Section 93, but made a “conscious decision” to not pursue obtaining leases from the plaintiffs after being presented with information concerning how many owners there were. The plaintiffs also contended that Lasseigne with “gross disregard” directed that the well be drilled to its final location. Finally, the plaintiffs alleged that Lasseigne “had actual, or constructive knowledge, or is presumed to know” that the bottom of the hole was located underneath their property, and that he knew or should have known that the minerals being produced were coming from underneath the plaintiffs’ property.
Two interventions were filed in the instant action by parties also claiming to be owners of various undivided interests in the property located in Section 93. The intervenors also claimed that their interests in the property at issue devolved from Uthe Successions of Peter Hill and Elnora Hill Johnson.[4] On February 18, 2015, TMR and Lasseigne filed various exceptions to the claims against Lasseigne in plaintiffs’ Second Supplemental and Amending Petition, including peremptory exceptions raising the objections of no cause of action and prescription.[5]
*560 The exception of no cause of action asserted that Lasseigne, as a corporate officer, could not be sued personally by third parties for acts of negligence related to the operations of TMR. As to the exception of prescription, TMR and Lasseigne, operating off the presumption that an officer cannot be sued by third parties for negligence, argued any other tort claims, presumably intentional tort claims,'were prescribed under La. R.S. 12:1502(D)". Louisiana Revised Statutes 12:1502 addresses prescriptive periods applicable to certain claims against persons who control business organizations.[6] TMR and Lass-eigne asserted that under La. R.S. 12:1502(D), an action for intentional tort against a corporate officer cannot .be brought “more than three years from the date of the alleged act or omission,” and the time limitations provided under the statute are not subject to suspension or interruption on any ground except by the timely filing of suit in a court of competent jurisdiction. TMR and Lasseigne’s exception concluded that |fiLasseigne’s involvement with the well terminated on June 30, 2010 when TMX ceased to be the operator of the well, thus, any cause of action against him prescribed on June 30, 2013.
Following a May 6, 2015 hearing, the trial court overruled TMR and Lasseigne’s exception of no cause of action as to the individual claims , against Lasseigne. However, at a separate hearing on June 3, 2015, the trial court sustained TMR and Lasseigne’s exception of prescription as to all of the claims against Lasseigne. At that time, the trial court adopted .the arguments advocated by TMR and Lasseigne and sustained the exception of .prescription. In a judgment signed on July 1, 2016, the trial court sustained the “peremptory exception of prescription of any , claims” against Lasseigne and dismissed with prejudice “any claims against” Lasseigne pursuant to La. R.S. 12:1501 and 12:1502.[7] The July 1, 2015 judgment also contained the written judgment overruling the exception of no cause of action. Lasseigne has not sought review of this portion of the trial court’s judgment.
The plaintiffs filed a motion for new trial seeking only reconsideration of the trial court’s decision to sustain the exception of prescription. Following a hearing, the trial court denied the motion for new trial in a judgment signed September 17, 2015.On October 27, 2015, the plaintiffs filed the instant devolutive appeal challenging the trial court’s denial of their motion for new trial on the issue of La. R.S. 12:1502.[8] The plaintiffs assert that the *561 trial court erred in the following 17respects: in applying La. R.S. 12:1502 in peremptory fashion; applying the provisions of La. R.S. 12:1502 to Lasseigne, an officer of a foreign corporation; failing to apply the more specific prescriptive statute applicable to claims for damages to immovable property, La. C.C. art. 3493; and failing to recognize the applicability of the doctrine of contra non valentem under the particular facts of this case. Only Lasseigne has filed' an appellee brief in response. As set forth below, in the instant matter, we find it necessary only to address the plaintiffs’ assertion that the trial court erred in applying La. R.S. 12:1502 to the officer of a foreign corporation.[9]
DISCUSSION
The inquiry in the instant appeal is limited to the legal question of whether the trial court erred in finding that the plaintiffs’ claims against Lasseigne, an officer of a foreign corporation authorized to do business in this state, are prescribed under La. R.S. 12:1501 and 12:1502. Accordingly, we will conduct a de novo review. See Peck v. Richmar Construction, Inc., 2013-1170 (La. App. 1st Cir. 2/26/14), 144. So.3d 1042, 1045, writ denied, 2014-0830 (La. 6/20/14), 141 So.3d 810.[10] Further, we "note that no evidence was introduced at the hearings herein to support or controvert TMR and Lasseigne’s exception of prescription; therefore, the exception must be decided upon facts alleged in the petition with all ^allegations accepted as true. See La. C.C.P. art. 931; Cichirillo v. Avondale Industries, Inc., 2004-2894 (La. 11/29/05), 917 So.2d 424, 428.
Louisiana Revised Statutes 12:1501 and 12:1502
Louisiana Revised Statutes 12:1501 states:
The provisions of this Chapter shall be applicable to all business organizations defined in R.S. 12:1502(B).
Louisiana Revised Statute 12:1502[11] provides, in pertinent part, as follows:
A. The provisions of this Section shall apply to all business organizations formed under the laws of this state *562 and shall be applicable to actions against any officer, director, shareholder, member, manager, general partner, limited partner, managing partner, or other person similarly situated. The provisions of this Section shall not apply to actions governed by R.S. 12:1-622, 1-833, 1-1407, or 1328(C).
B. The term “business organization” includes any entity formed under the laws of this state engaged in any trade, occupation, profession, or other commercial activity including but not limited to professions licensed by a state or other governmental agency. This Section shall apply without limitation to corporations, incorporated or unincorporated associations, partnerships, limited liability partnerships, partnerships in com-mendam, limited liability companies, or cooperative associations or other entities formed under the laws of this state.
C. No action for damages against any person described in Subsection A of this Section for an unlawful distribution, return of an unlawful distribution, or for breach of fiduciary duty, including without limitation an action for gross negligence, but excluding any action covered by the provisions of Subsection D of this Section, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act, omission, or neglect.
IflD. No action for damages against any person listed in Subsection A of this Section for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for an intentional unlawful distribution, or for acts or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within two years from the date of the alleged act or omission, or within two years from the date the alleged act or omission is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act or omission.
E. The time limitations provided in this Section shall not be subject to suspension on any grounds or interruption except by timely suit filed in a court of competent jurisdiction and proper venue.
[Emphasis added.]
Chapter 24 of Title 12 of the Louisiana Revised Statutes contains only La. R.S. 12:1501 and 12:1502. La. R.S. 12:1502 recognizes two separate time limitations applicable to suits filed against any “officer, director, shareholder, member, manager, general partner, limited partner, managing partner, or other person similarly situated” of a “business organization” “formed under the laws of this state” for specific and enumerated non-intentional and intentional tort actions. La. R.S. 12:1502(A), (C), and (D). Louisiana Revised Statutes 12:1502 has been classified as a “hybrid liberative prescriptive statute.” See Wooley v. Lucksinger, 2006-1140 (La. App. 1st Cir. 12/30/08), 14 So.3d 311, 462, rev’d on other grounds, 2009-0571 (La. 4/1/11), 61 So.3d 507. This classification recognizes that the statute has been expressly identified by the legislature as a prescriptive statute that is conditioned by certain peremptive attributes—in particular, the inability of claims asserted there *563 under to be subject to interruption and suspension.
The trial court found that all of the plaintiffs’ claims against Lasseigné for his actions as the president of TMR were prescribed under La. R.S. 12:1501 and 12:1502. In its reasons for judgment, the trial court found that the application of La. R.S. 12:1502 was not limited to domestic corporations “formed under ’ the laws of this state” as stated in the statute, but also included foreign corporations |inauthorized to transact business in this state. The trial court reasoned that under La. R.S. 12:306 foreign corporations authorized to transact business in Louisiana are afforded the same “rights and privileges” and are subject to the “same duties, restrictions, penalties and liabilities” as businesses organized under Louisiana law.
As set forth below, we find that La. R.S. 12:1502 does not apply to the claims asserted against Lasseigne, because the statute unambiguously applies only to persons who control business organizations formed under the laws of this state—i.e., domestic business organizations. Thus, the trial court’s sustaining of the exception of prescription under La. R.S. 12:1501 and 12:1502 was in error.
Application of La. R.S. 12:1502 Limited to Domestic Corporations
The starting point in the interpretation of any statute is the language of the statute itself. M.J. Farms, Ltd. v. Exxon Mobil Corp., 2007-2371 (La. 7/1/08), 998 So.2d 16, 27. The plain meaning of the legislation should be conclusive. Borel v. Young, 2007-0419 (La. 11/27/07), 989 So.2d 42, 50. The words of a law must be given their generally prevailing meaning. La. C.C. art. 11; La. R.S. 1:3. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature, nor shall the letter of the law be disregarded under the pretext of pursuing its spirit. La. C.C. art. 9; La. R.S. 1:4; La. C.C.P. art. 5052. Importantly, with regard to the particular type of statute at issue here, Louisiana courts have consistently held that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, \of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted. Carter v. Haygood, 2004-0646 (La. 1/19/05), 892 So.2d 1261, 1268.
Louisiana Revised Statutes 12:1502 contains the phrase “formed under the laws of this state” in three separate places. Subsection A of La. R.S. 12:1502 states l^that the provisions of this statute “shall apply to all business organizations formed under the laws of this state.” The limitation set forth in Subsection A is reiterated in Subsection B wherein the statute defines the phrase “business organization” initially referenced in Subsection A as “any entity formed under the laws of this state.” Subsection B then concludes that “[t]his Section shall apply without limitation to corporations ... formed under the laws of this state.” Further, both Subsections C and D also refer back to Subsection A when setting forth the operation of the prescriptive periods set forth therein.
The words of a law must be given their generally prevailing meaning. La. C.C. art. 11; La. R.S. 1:3. In the context of a corporate officer, reading the plain language of La. R.S. 12:1502 establishes that the legislature intended the statute to apply to officers of domestic corporations “formed under the laws of this state.” The word “formed” is defined as follows:”... to combine to make ... to arrange in order ... come into existence.... ” WEBSTER’S NINTH NEW COLLEGIATE DICTIO *564 NARY 485(1991 ed.) “Under” is defined as follows: “subject to the authority; control, guidance, or instruction of.” Id. at 1285. Thus, the generally prevailing meaning of “formed under the laws of this state” when referring to a corporation means a corporation created in accordance with Louisiana statutory requirements governing the formation or creation of a domestic corporation as set forth in the Business Corporation Act, or its predecessor, the Business Corporation Law. See La. R.S. 12:1 (repealed by 2014 La. Acts, No, 328). In contrast, a foreign corporation is an entity incorporated under a law other than this state. See La. R.S. 12:1(K) (repealed by 2014 La. Acts, No. 328); ' and La. R.S. 12:1-140(10). Notably, a foreign corporation remains classified as such even when it takes the necessary steps to become authorized to transact business in Louisiana.
Yet, Lasseigne contends, and the trial court agreed, that the scope of La. R.S. 12:1502 includes officers of foreign corporations authorized to transact business in |12Louisiana, like Lasseigne.[12] Lasseigne points to La. R.S. 12:306, which in addition to granting foreign corporations authority to transact business in the state, provides that a certificate of authority has the effect of granting a foreign corporation the right to “[ejnjoy the same, but no greater, rights and privileges as a business or nonprofit corporation organized under the laws of this state to transact the business which such foreign corporation is authorized to transact in this state.” La. R.S. 12:306(2). La. R.S. 12:306 has been interpreted to grant to authorized corporations powers and privileges as including:
[T]he legal status to sue and be sued in the Courts of our State, continuity of business without interruption by death or dissolution, transfer of property interests by the disposition of shares of stock, advantages of business controlled and managed by corporate directors, and -the general absence of individual liability, among others.
Colonial Pipeline Co. v. Agerton, 289 So.2d 93, 100 (La. 1974), aff'd sub nom. Colonial Pipeline Co. v. Traigle, 421 U.S. 100, 111-112, 95 act. 1538, 1544-1545, 44 L.Ed.2d 1 (1975)
Louisiana Revised Statutes 12:306 is located in Chapter 3 of Title 12 entitled “Foreign Corporation Law.” Louisiana Revised Statutes 12:306 was enacted in 1969. Review of Chapter 3 evidences a focus on *565 establishing the procedures for the issuance, effect, withdrawal, termination, and revocation of certificates of authority to foreign corporations. Lasseigne has not directed our attention to, nor |]3has our review revealed, any statutory basis to support the conclusion that the legislature considered, much less intended, the extension of the privileges afforded to authorized foreign corporations under La. R.S. 12:306 to the officers, directors, or shareholders of such corporations. Further, we note that La. R.S, 12:1502’s enactment in 2001 constitutes the latest expression of legislative intent-on this issue. See Pumphrey v. City of New Orleans, 2005-0979 (La. 4/4/06), 925 So.2d 1202, 1211.
When the law is clear and unambiguous it must be applied as written, thus, reading the phrase “formed under the laws of this state” to include officers of authorized foreign corporations reads a provision into the statute not present in the existing text. It would be more logical to conclude that had the legislature intended to include officers of authorized foreign corporations, it would have included foreign authorized corporations in the language of the statute, or would have omitted the multiple recitations of the phrase “formed under the laws of this state.”
Lasseigne makes a peripheral suggestion that a failure to find that La. R.S. 12:306 extends the “privileges” of La. R.S. 12:1502 to officers of corporations would violate the provisions of the equal protection clause of the Fourteenth Amendment of the United States Constitution. As a general rule, statutes are presumed to be constitutional. See State v. Citizen, 2004-1841 (La. 4/1/05), 898 So.2d 325, 334. Nevertheless, the question of the constitutionality of La. R.S. 12:1502 was not properly pleaded nor ruled upon by the trial court, and, thus it cannot be considered by this court. In Vallo v. Gayle Oil Co., Inc., 94-1238 (La. 11/30/94), 646 So.2d 859, 864-865, the supreme court explained the requirements for pleading the unconstitutionality of a statute in the district court:
Our Code of Civil Procedure does not require a single procedure or type of proceeding for challenging or assailing the constitutionality of a statute. However, the long-standing jurisprudential rule of law is: a statute must first be questioned in the trial court, not the appellate courts, and the "unconstitutionality of a | uStatute must be specially pleaded and the grounds for the claim particularized.
The pleadings allowed in civil actions are petitions, exceptions, written motions and answers. LSA-C.C.P. art. 852. Therefore, when the unconstitutionality of a statute is specifically pled, the claim must be raised in a petition (the original petition, an amended and supplemental petition or a petition in an incidental demand), an exception, a motion or an answer. It cannot be raised in a memorandum, opposition or brief as those documents do not constitute pleadings. [Citations and footnotes omitted.]
A review of the record in the instant case indicates the issue of the constitutionality of La. R.S. 12:1502’s application only to officers of domestic corporations was discussed in a-footnote in the “Supplemental Memorandum Regarding Prescription of Claims Against Raymond J. Lass-eigne” filed by TMR and Lasseigne in the trial court. As the supreme court explained in Vallo, a memorandum is not a pleading recognized under the Code of Civil Procedure and is therefore not a proper method to challenge the constitutionality of a statute. Meaux v. Galtier, 2007-2474 (La. 1/25/08), 972 So.2d 1137, 1138.
A straightforward reading of La. R.S. 12:1502 clearly demonstrates that ⅛ does *566 not apply to the plaintiffs’ claims asserted against Lasseigne, the officer of a Texas corporation.
CONCLUSION
Based on the above, we find that the trial court erred in finding that plaintiffs’ action against Raymond J. Lasseigne was prescribed under La. R.S. 12:1501 and 12:1502. We reverse the judgment of the trial court dismissing the claims of the plaintiffs and remand this matter to the trial court for further proceedings. All costs of this appeal are to be paid by the defendant/appellee, Raymond J. Lass-eigne.
REVERSED AND REMANDED.

. Review of the record indicates that for purposes of this appeal the parties have identified the Calvin Hill, et al. plaintiffs/appellants to include the following individuals: Calvin J, Hill, Charles Edward Hill, Marian Hill Walker, Esquemon Anthony Hill, Rhonda Foster, Dr. Russell Hill, Vincent Hill, Jeffery Hill, Shawn Hill, Mary Charles a/k/a Mary Hill, Kristina Hill (a minor represented herein by JeVaughn Hill), Kendra Hill, Bernadette Hill, Kenneth Amono, Dionne Hill, DuWana Hill, Kimsiana Hill-Lathan, Andre Hill, Napoleon Whitaker, Maty Ativie, Merion Jean Johnson,-Camesha Stanton, Annette Whitaker-Woods, Pernell Hill, Eurilee Hill, Karen Maze, Amos Lagarde, Ida Mae Hill Johnson, Shirley Lock-man, Burnett Grevious, Albert Grevious, Stal-ette Brown, Emelda Hill, Amanda Harris, Leon Whitaker, Marcus Johnson, Craig Hill, LaCora Whitaker, Lee Whitaker, Rodney Hill, Edward Hill, Jeffery Hill, Karen Maze, Terroll *558 Sanders, and Oran Hill (or his substituted heirs).

. A related but separate action was filed by Charles R. Salemi in connection with drilling and operations associated with A. Wilbert’s Sons, LLC, 93 No. 1 well. Salemi, who also owned property in Section 93, alleged that the bottom of the hole of the well was located within 330 feet of his properly line in violation of Statewide Order 29(E). There, Lass-eigne filed a peremptory exception of prescription raising the objection of prescription in response to Salemi’s action against Lass-eigne on the grounds of La. R.S. 12:1502. While the facts are different in the two cases, the legal issues are identical. We address the merits of the case brought by Salemi in a separate opinion being issued at the same time as the opinion in the instant matter. See Salemi v. TRM Exploration, Inc., 2016-0567 (La. App. 1st cir. 6/13/17), 224 So.3d 14, 2017 WL 2558324.

. The First and Second Supplemental and Amending Petitions divide the plaintiffs into three groups—A, B, and C. The A group consists of plaintiffs who have never entered into a mineral lease in connection with the property. The B and C groups consist of plaintiffs who entered into mineral leases in 2012 with Park, some of which were later assigned to Vitol. The distinctions between the groups of plaintiffs do not factor in the determination of the instant matter.

. The first intervention was filed on November 19, 2014, by a group referred to collectively as “Roosevelt Hill, et al. The Roosevelt Hill, et al. intervenors filed subsequent supplemental and amending petitions for intervention. The second intervention was filed by Felix Hill on December 16, 2014.

.One of the exceptions filed by TMR and Lasseigne challenged the plaintiffs' and in-tervenors’ allegations that the defendants "converted” the plaintiffs’ exclusive right to explore their land for the production of minerals. A hearing on the exception was heard on May 6, 2015, and in a judgment signed May 12, 2015, the trial court sustained the exception, finding that an action for conversion involved the taking of a movable, and excluded actions related to minerals. The trial court found instead that under the holding of Nunez v. Wainoco Oil & Gas, Co., 488 So.2d 955 (La. 1986), the action asserted by the plaintiffs and intervenors was one for subsurface trespass.

. Notably, at no point during the consideration of this issue below was the application of former La. R.S, 12:96 (repealed by La. Acts 2014, No. 328, effective January 1, 2015)' raised by the parties or considered by the trial court. As a general rule, appellate courts will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal. Segura v. Frank, 93-1271 (La. 1/14/94), 630 So.2d 714, 725, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994); Stewart v. Livingston Parish School Bd., 2007-1881 (La. App. 1st Cir. 5/2/08), 991 So.2d 469, 474.

. We note that the counsel for the intervenors appeared at the hearing on TMR and Lass-eigne’s exception of prescription, and counsel for the Roosevelt Hill, ef al. intervenors argued in opposition to the exception. However, we make no determination as to the status of the intervenors’ claims, and note that interve-nors did not seek a new trial in connection with the trial court's July 1,. 2015 judgment sustaining the exception, of prescription, .nor have the intervenors challenged the trial court’s initial ruling on the exception with this court.

,The denial of a motion for new trial is an interlocutory and non-appealable judgment. However, an appeal of the denial of a motion for new trial should be considered as an appeal of the judgment on the merits when it is clear from appellants’, brief that the appeal *561 was intended to be on the merits, See Carpenter v. Hannan, 2001-0467 (La. App. 1st Cir. 3/28/02), 818 So.2d 226, 228-229, writ denied, 2002-1707 (La. 10/25/02), 827 So.2d 1153. It is clear the appellants intended to appeal the July 1, 2015 judgment dismissing their suit, so we consider the appeal as an appeal of that judgment,

. Based on our finding that La. R.S. 12:1502 does not apply to officers of foreign' corporations, we decline to consider plaintiffs' other assignments of error regarding the application of La. R.S. 12:1502 under the facts presented herein, The jurisprudence provides that courts should not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies. See St. Charles Parish School Bd. v. GAF Corp., 512 So.2d 1165, 1170 (La. 1987) (on rehearing).

. The timeline of relevant events as outlined herein is not in dispute; therefore, the doctrine of manifest error does not apply to this court’s review. Ristroph v. Louisiana Public Facilities Authority, 2006-1669 (La. App. 1st Cir. 9/14/06), 943 So.2d 492, 494.

.We note that pursuant to La. Acts 2014, No, 328 (effective January 1, 2015) the legislature adopted the "Business Corporation Act,” which repealed and reenacted Chapter 1 of Title 12 to make Louisiana business law consistent with the Model Business Corporation Act, Louisiana Revised Statutes 12:1502 was amended by the 2014 Act to add the last sentence in' La, R.S. 12:1502(A)(“The provisions of this Section shall- riot apply to actions governed by R.S, 12:1-622, 1-833, -1-1407, or . 1328(C)”). The excluded actions relate to actions for unlawful distributions against shareholders of corporations (La. R.S. 12:1-622), directors of a corporation (La. R.S. 12:1-833), members of an LLC (La. R.S. 12:1328(0), and claims against a dissolved corporation (La. R.S. 12:1-1407),

. At the hearing on the exception and herein, Lasseigne maintains that in Wooley this court applied the provisions of La, R.S. 12:1502 to officers of foreign corporations, In Wooley, the Louisiana Commissioner of Insurance, in his capacity as the liquidator of an insolvent insurer, filed claims agáinst the officers and directors of multiple corporate entities, both domestic (formed in Louisiana) and foreign. See Wooley, 14 So.3d at 337, 346-347. Relying on La. R.S. 12:1502, the defendants filed exceptions of prescription, which the trial court denied. In affirming that ruling, this court relied, in part, on La. R.S. 22:735(B) (see now La, R.S, 22:2008(B)), providing that the filing of a suit by the commissioner of insurance seeking an order of liquidation interrupts the running of prescription for any claim in favor of the insolvent insurer for two years, if an order of liquidation is granted. See Wooley, 14 So.3d at 463, 466-467. The effect of that interruption, together with the continuing nature of the alleged torts, were essential to this court’s conclusion that the commissioner’s claims filed on behalf of the insolvent insurer had not prescribed. See Wooley, 14 So.3d at 463, 466-467. While La. R.S, 12:1502 was also cited, the citation of that statute can be construed as pertinent only to the claims against the officers of the domestic corporation; this court never stated that La. R.S. 12:1502 applies to- actions against officers of foreign corporations. The Louisiana Supreme Court later reversed on other grounds, finding Texas’ substantive law applied to the claims of breach of fiduciary duty. We do not find Wooley controlling on this issue.