WELCH, J.
|2The plaintiff/appellant, Charles J. Sale-mi, appeals a trial court judgment sustaining a peremptory exception raising the objection of prescription filed by the defen-dantyappellee, Raymond J. Lasseigne (“Lasseigne”). The trial court’s action resulted in the dismissal of the plaintiffs claims against Lasseigne with prejudice. For the reasons that follow, we reverse the judgment of the trial court.
FACTUAL BACKGROUND
. Salemi is the owner of a certain .tract of immovable property described as being located in the South 2/3 of Lot 5, Section 93, Township 7 South, Range 10 East, Parish of West Baton Rouge (“Salemi property”). Salemi filed suit seeking damages for drainage of minerals sustained as the result of the placement of a bottom hole location of a producing well within 330 feet of his property line, in violation of a state regulation. As set forth in. detail below, Salemi has asserted claims in contract against various lessees of his property for failing to take any action to -prevent the drainage as required under the leases. Additionally, Salemi has asserted a claim for damages against the initial operator, its corporate president, and two successor operators for their respective roles in the drilling and operation of the well. It is the claims against the corporate president that are the subject of this appeal.
In his petition, Salemi alleged that between the years of 2005 and 2011, he granted three mineral leases on his property. Salemi executed a mineral lease of his property on December 9, 2005, in favor of TMR Exploration, Inc. (“TMR”), a Texas corporation. The first lease expired on December 9, 2008, and Salemi executed a second lease on the property in favor of TMR, which became effective on December 9, 2008. Later, on October 24, 2011, Salemi executed a third lease in favor of Park Exploration, Inc. (“Park”), formerly known as TMR Energy, LLC. |aAccording to the allegations in Salemi’s' petition, the three lessees were subsequently subject to various partial assignments and/or subleases.
Salemi alleged that on May 15, 2007, TMR transferred all or part of its interest in the 2005 lease to TMR Energy (now Park Oil & Gas, LLC following a name change). Then, one-day after divesting itself of the lease, on May 16, 2007, TMR filed an application, for a permit to drill for minerals in Section 93, Township 7 South, Range 10 East. TMR’s permit application is alleged to have erroneously identified “A. Wilbert’s Sons, LLC” as the sole owners of all property located in Section 93, Township 7 South, Range 10 East. On May 18, 2007, a permit to drill the well designated as the‘“A. Wilbert’s Sons LLC, 93 No. 1” was issued by the Louisiana. Commissioner of Conservation (“Commissioner”).- -
*16 TMR filed an amended permit with the Commissioner in June of 2007, identifying the proposed bottom hole location of the well at certain proposed coordinates; however, ultimately the bottom hole location of the well was completed at a location .underneath property adjacent to the Salemi property and within 330 feet of Salemfs property line. The property adjacent to.the Salemi property is owned by various individuals who trace their ownership interests to the Successions of Peter Hill and Elnora Johnson Hill (the “Hill property”). The Hill property owners filed a separate action captioned Calvin J. Hill, et al. v. TMR Exploration, Inc, (“Hill stiit”) for subsurface trespass, asserting that the bottom hole location was placed underneath their property without their knowledge or permission. See Hill v. TMR Exploration, Inc., 2016-0566 (La. App. 1st Cir. 6/13/17), 223 So.3d 556, 2017 WL 2558323.[1]
|/The well began production on January 3, 2008, with TMR in the role of operator. On July 1, 2010, TMR ceased to be the operator of the well after an amended permit to drill was issued designating Park as the second operator of the well. Park, in turn, assigned its rights to a third operator, Vitol Resources, Inc. (“Vitol”), which was designated as the third operator of the well in an amended permit, effective December 1, 2012. Salemi alleged that he only discovered that the bottom hole location of the well was less than 330 feet from his property line on August 15, 2013, when a surveyor, Cletus Langlois, delivered a plat to Salemi showing the bottom hole location of the well 258 feet north of the north line of the Salemi property.
Salemi filed his original petition on July 3, 2014. The petition asserts an action sounding in contract against the lessees, and an action sounding in tort against TMR, Park, and Vitol in their capacities as operators of the well.[2] Salemi maintained that the well’s location within 330 feet of his property creates a presumption that the well was draining minerals from beneath the property. He further asserted that under Louisiana Department of Natural Resources, Office of Conservation Statewide Order No. 29-E, no permit can be issued for the drilling of a well whenever a well is located within 330 feet of a property owner’s property line without the formation of a compulsory unit. In this instance, such a compulsory unit would include the Salemi property.
Salemi’s petition asserted that TMR, Park, and/or Vitol were liable for intentionally and/or negligently placing the bottom hole location of the well within 330 feet from his property line. The petition specifically alleges that TMR should have known or is presumed to know the location of the Salemi property because |fiTMR had entered into the lease with Salemi as early as 2005 for the same property. With regard to his claims against the lessees, Sa- *17 lemi contended that the leases imposed a contractual obligation on the lessees to protect Salemi from drainage caused by a well located on the adjacent property, and sought cancellation of said leases.
At issue in the instant appeal are allegations in the petition against defendant, Raymond J. Lasseigne, the president of TMR, the entity that drilled the well and was the first operator thereof. Relevant to the issues under consideration is TMR’s status as a Texas corporation authorized to transact business in Louisiana. In particular, Salemi alleged that Lasseigne directed and/or coordinated the operations of TMR. Further, Salemi alleged that Lasseigne, a petroleum engineer experienced in the oil and gas industry, knew, should have known, or is presumed to have known the requirements of Statewide Order No. 29-E. Salemi asserted that Lasseigne’s negligent failure to require TMR to apply to the Commissioner for formation of a unit for the well resulted in Salemi not receiving his fair and equitable share of production from the well.
On August 25, 2014, TMR and Lass-eigne filed various exceptions to Salemi’s petition, including the initial exceptions was a peremptory exception of no cause of action as to the claims against Lasseigne. TMR and Lasseigne contended that because Lasseigne had no personal duty to or contractual relationship with Salemi, there was no basis for personal liability to third parties for his actions as a corporate officer. TMR and Lasseigne also asserted an exception of no cause of action, which maintained that there is no private cause of action for a violation of Statewide Order No. 29-E. The trial court overruled the exceptions in a judgment signed on April 21, 2015. Neither TMR nor Lasseigne has not sought review of either of these rulings.
IfiOn June 9, 2015, Lasseigne filed an exception of prescription as to the individual claims asserted against him. Lasseigne averred that the trial court had already sustained the exception of prescription against Lasseigne in the Hill suit following a hearing on June 3, 2015.[3] Lasseigne argued that Salemi alleged only acts of negligence by Lasseigne and a violation of Statewide Order No. 29-E. Despite the trial court’s previous overruling Lass-eigne’s exception of no cause of action on the issue of corporate officer liability as to claims by a third party, Lasseigne reasserted his argument that third parties do not have a cause of action in negligence against a corporate officer. Then, Lass-eigne asserted that Salemi’s only other allegation, the assertion that Lasseigne violated Statewide Order No. 29-E, was prescribed under the provisions of La. R.S. 12:1502(D). Lasseigne asserted that under La. R.S. 12:1502(D), a tort action against a corporate officer cannot be brought “more than three years from the date of the alleged act or omission,” and no claims under the statute are subject to suspension or interruption on any ground except by the timely filing of suit in a court of competent jurisdiction. Lasseigne averred that the unlawful action ceased when TMR ceased operating the well in June of 2010, or when the 2008 lease terminated in De *18 cember of 2010. According to Lasseigne, Salemi’s claims against him filed in July 2014 were prescribed under La. R.S. 12:1502(D), regardless of which date applied to begin -the tolling of prescription.
Lasseigne’s exception was set for heading on September 2, 2015, the same day as the 'hearing on the motion for new trial filed by the Hill plaintiffs in the Hill suit. The Hill plaintiffs sought a new trial following the trial court’s sustaining of |7the defendants’ exception of prescription as to the claims against Lasseigne under La; R.S. 12:1502(D). Counsel for Salemi and Lasseigne agreed that the legal issue on the question of prescription as to Lass-eigne in the Hill suit and the instant matter was identical; therefore, the Salemi exception was submitted on the briefs. In a judgment signed September 22, 2015, the trial court sustained Lasseigne’s exception of prescription, adopting as its reasons the argument made by the' defendant in the Hill suit.[4]
On October 27, 2015, Salemi filed the instant devolutive appeal. Salemi asserts that the trial court erred in the following respects: in applying La. R.S. 12:1502 in peremptory fashion; applying the provisions of La. R.S, 12:1502 to Lasseigne, an officer of a foreign corporation; failing to apply the more specific prescriptive statute applicable to claims for damages to immovable property, La. C.C. art. 3493; and failing to recognize the applicability of the doctrine of contra non valentem under the particular facts of this case. As set forth below, in the instant matter, we find it necessary only to. address Salemi’s assertion that the trial court erred' in applying La. R.S, 12:1501 and 12:1502 to the officer of a foreign corporation.[5]
DISCUSSION
The inquiry in the instant appeal is limited to the legal question of whether the trial court erred in finding that Salemi’s claims against Lasseigne, an officer of a foreign corporation authorized to do business in this state, are prescribed under La. R.S. 12:1501 and 12:1502. Accordingly, we will conduct a de novo review. See Peck v. Richmar Construction, Inc., 2013-1170 (La. App. 1st Cir. 2/26/14), 144 So.3d 1042, 1045, writ denied, 2014-0830 (La. 6/20/14), 141 So.3d 810.[6] Further, we nóte that no evidence was introduced at -the healings herein to support or controvert TMR and Lasseigne’s exception of prescription; therefore, the exception must be decided upon' facts' alleged in the petition with all allegations accepted as true. See La. C.C.P. art. 931; Cichirillo v. Avondale Industries, Inc., 2004-2894 (La. 11/29/05), 917 So.2d 424, 428.
*19 Louisiana Revised Statutes 12:1501 and 12:1502
Louisiana Revised Statutes 12:1501 states:
The provisions of this Chapter shall be applicable to all business organizations defined in R.S. 12:1502(B).
Louisiana Revised Statute 12:1502[7] provides, in pertinent part, as follows:
A. The provisions of this Section shall apply to all’ business organizations formed under the laws of this state and shall be applicable to actions against any officer, director, shareholder, member, manager, general partner, limited partner, managing.partner, or other person similarly situated. The provisions of this Section shall not apply to actions governed by R.S. 12:1-622, 1-833, 1-1407, or 1328(C).
B. The term “business organization” includes any entity formed under the laws of this state engaged in any trade, occupation, profession, or other commercial activity including but not limited to professions licensed by a state or other governmental agency. This Section shall apply without limitation to ' corporations, incorporated or unincorporated associations, partnerships, limited liability partnerships, partnerships in com-mendam, limited liability companies, |3or cooperative associations or other entities formed under the laws of this state.
C. No action for damages against any person described in Subsection A of this Section for an unlawful distribution, return of an unlawful distribution, or for breach of fiduciary duty, including without limitation an action for gross negligence, but excluding any action covered by the provisions of Subsection D of this Section, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered, but in no event shall an action cqvered by the provisions of this Subsection ,be brought more than three years from the date , of the alleged act, omission, or neglect.
D. No action for damages against any person listed in Subsection A of this Section for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for an intentional unlawful distribution, or for acts ■ or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within two years from the date of the alleged act or omission, or within two years from the date the alleged act or .omission is discovered or should have been discovered, but in no event shall an action covered by the provisions of this. Subsection-be brought more than three years from, the date of the alleged act or omission.
E. The time limitations provided in this Section shall not be subject to suspension on any grounds or interruption ex *20 cept by timely suit filed in a court of competent jurisdiction and proper venue.
[Emphasis added.]
Chapter 24 of Title 12 of the Louisiana Revised Statutes contains only La. R.S. 12:1501 and 12:1502. La. R.S. 12:1502 recognizes two separate time limitations applicable to suits filed against any “officer, director, shareholder, member, manager, general partner, limited partner, managing partner, or other person similarly situated” of a “business organization” “formed under the laws of this state” for specific and enumerated non-intentional and intentional tort actions. La. R.S. 12:1502(A), (C), and (D). Louisiana Revised Statutes 12:1502 has been classified as a “hybrid liberative prescriptive statute.” See Wooley v. Lucksinger, 2006-1140 (La. App. 1st Cir. 12/30/08), 14 So.3d 311, 462, rev’d on other grounds, 2009-0571 (La. 4/1/11), 61 So.3d 507. This classification recognizes that the 110statute has been expressly identified by the legislature as a prescriptive statute that is conditioned by certain per-emptive attributes—in particular, the inability of claims asserted thereunder to be subject to interruption and suspension.
The trial court found that all Salemi’s claims against Lasseigne for his actions as the president of TMR were prescribed under La. R.S. 12:1501 and 12:1502. In adopting its reasoning from the Hill suit, the trial court apparently found that the application of La. R.S. 12:1502 was not limited to domestic corporations “formed under the laws of this state” as stated in the statute, but also included foreign corporations authorized to transact business in this state. The trial court also apparently found that under La. R.S. 12:306 foreign corporations authorized to transact business in Louisiana are afforded the same “rights and privileges” and are subject to the “same duties, restrictions, penalties and liabilities” as businesses organized under Louisiana law.
As set forth below, we find that La. R.S. 12:1502 does not apply to the claims asserted against Lasseigne, because the statute unambiguously applies only to persons who control business organizations formed under the laws of this state—i.e., domestic business organizations. Thus, the trial court’s sustaining of the exception of prescription under La. R.S. 12:1501 and 12:1502 was in error.
Application of La. R.S. 12:1502 Limited to Domestic Corporations
The starting point in the interpretation of any statute is the language of the statute itself. M.J. Farms, Ltd. v. Exxon Mobil Corp., 2007-2371 (La. 7/1/08), 998 So.2d 16, 27. The plain meaning of the legislation should be conclusive. Borel v. Young, 2007-0419 (La. 11/27/07), 989 So.2d 42, 50. The words of a law must be given their generally prevailing meaning. La. C.C. art. 11; La. R.S. 1:3. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature, nor shall the letter of the law be ^disregarded under the pretext of pursuing its spirit. La. C.C. art. 9; La. R.S. 1:4; La. C.C.P. art. 5052. Importantly, with regard to the particular type of statute at issue here, Louisiana courts have consistently held that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted. Carter v. Haygood, 2004-0646 (La. 1/19/05), 892 So.2d 1261, 1268.
Louisiana Revised Statutes 12:1502 contains the phrase “formed under the *21 laws of this state” in three separate places. Subsection A of La. R.S. 12:1502 states that the provisions of this statute “shall apply to all business organizations formed under the laws of this state.” The limitation set forth in Subsection A is reiterated in Subsection B wherein the statute defines the phrase “business organization” initially referenced in Subsection A as “any entity formed under the laws of this state.” Subsection B then concludes that “[t]his Section shall apply without limitation to corporations ... formed under the laws of this state.” Further, both Subsections C and D also refer back to Subsection A when setting forth the operation of the prescriptive periods set forth therein.
The words of a law must be given their generally prevailing meaning. La. C.C. art. 11; La. R.S. 1:8. In the context of a corporate officer, reading the plain language of La. R.S. 12:1502 establishes that the legislature intended the statute to apply to officers of domestic corporations “formed under the laws of this state.” The word “formed” is defined as follows: “... to combine to make ... to arrange in order ... come into existence.... ” WEBSTER’S NINTH NEW COLLEGIATE DICTIONARY 485(1991 ed.) “Under” is defined as follows: “subject to the authority, control, guidance, or instruction of.” Id. at 1285. Thus, the generally prevailing meaning of “formed under the laws of this state” when referring to a corporation means a corporation created in accordance with Louisiana statutory | ^requirements governing the formation or creation of a domestic corporation as set forth in the Business Corporation Act, or its predecessor, the Business Corporations Law. See La. R.S. 12:1 (repealed by 2014 La. Acts, No. 328). In contrast, a foreign corporation is an entity incorporated under a law other than this state. See La. R.S. 12:1(K) (repealed by 2014 La. Acts, No. 328); and La. R.S. 12:1-140(10). Notably, a foreign corporation remains classified as such even when it takes the necessary steps to become authorized to transact business in Louisiana.
Yet, Lasseigne contends, and the trial court agreed, that the scope of La. R.S. 12:1502 includes officers of foreign corporations authorized to transact business in Louisiana, like Lasseigne.[8] Lasseigne points to La. R.S. 12:306, which in addition to granting foreign corporations authority to transact business in the state, provides that a certificate of authority has the effect of granting a foreign corporation the right *22 to “[e]njoy the same, but no greater, rights and privileges as a business or nonprofit corporation organized under the laws of this state to transact the business which such foreign corporation is authorized to transact in this state.” La. R.S. 12:306(2). La. R.S. 12:306 has been interpreted to grant to authorized corporations powers and privileges as including:
[T]he legal status to sue, and be sued in the Courts of our State, continuity of business without interruption by death or dissolution, [^transfer of property interests, by the disposition of shares .of stock, advantages of business controlled and managed by corporate directors, and the general absence of individual liability, among others.
Colonial Pipeline Co. v. Agerton, 289 So.2d 93, 100 (La. 1974), aff'd sub nom. Colonial Pipeline Co. v. Traigle, 421 U.S. 100, 111-112, 95 S.Ct. 1638, 1544-1545, 44 L.Ed.2d 1 (1975).
Louisiana Revised Statutes 12:306 is located in Chapter 3 of Title 12 entitled “Foreign Corporation Law.” Louisiana Revised Statutes 12:306 was enacted in 1969. Review of Chapter 3 evidences a focus on establishing the procedures for the issuance, effect, withdrawal, termination, and revocation, of certificates of authority to foreign corporations. Lasseigne has not directed our attention to, nor has our review revealed, any statutory basis to support the conclusion that the legislature considered, much less intended, the extension of the privileges afforded to authorized foreign corporations under La. R.S. 12:306 to the officers,, directors, or shareholders of such corporations. Further, we note that La. R.S. 12:1502’s enactment in 2001 constitutes the latest expression of legislative intent on this issue. See Pumphrey v. City of New Orleans, 2005-0979. (La. 4/4/06), 925 So.2d 1202, 1211.
When the law is clear and unambiguous it must be applied as written, thus, reading the phrase “formed under the laws of this ■state” to include officers of authorized foreign corporations reads a provision into the statute not present in the existing text. It would be more logical to conclude that had the legislature intended to include officers of authorized foreign corporations it would have included foreign authorized corporations in the language of the statute, or would have omitted the multiple recitations of the phrase “formed under the laws of this state.”
Lasseigne makes a peripheral suggestion that a failure to find that La. R.S. 12:306 extends the “privileges” of La. R.S. 12:1502 to officers of corporations would violate the provisions of the equal protection clause of the Fourteenth Amendment of the United States Constitution. As a general rule, statutes are presumed to be constitutional. See State v. Citizen, 2004-1841 (La. 4/1/06), 898 So.2d 325, 334. Nevertheless, the question of the constitutionality of La. R.S. 12:1502 was not properly pleaded nor ruled upon by the trial court, and, thus it cannot be considered by this court. In Vallo v. Gayle Oil Co., Inc., 94-1238 (La. 11/30/94), 646 So.2d 859, 864-865, the supreme court explained the requirements for pleading the unconstitutionality of a statute in the district court:
Our Code of Civil Procedure does not require a single procedure or type of proceeding for challenging or assailing the constitutionality of a statute. However, the long-standing jurisprudential rule of law is: a statute must first be questioned in the trial court, not the appellate courts, and the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized.
*23 The pleadings allowed in civil actions are petitions, exceptions, written motions and answers, LSA-C.C.P. art. 852, Therefore, when the unconstitutionally of a statute is specifically pled, the claim must be raised in a petition (the original petition, an amended and- supplemental petition or a petition in an incidental demand), an exception, a motion or an answer. It cannot be raised in a memorandum, opposition or brief as those documents do not constitute pleadings. [Citations and footnotes omitted],
A review of the record in the instant case indicates the issue of the constitutionality of La. R.S. 12;1502’s application only to officers of domestic corporations was discussed in a footnote in Lasseigne’s “Reply to Opposition to Lasseigne’s Peremptory Exception of Prescription” filed'1 in the trial court. As the supreme court explained in Vallo, a memorandum is not a pleading recognized under the Code of Civil Procedure and is therefore not a proper method to challenge the constitutionality of a statute. Meaux v. Galtier, 2007-2474 (La. 1/25/08), 972 So.2d 1137, 1138.
A straightforward reading of La. R.S. 12:1502 clearly demonstrates that it does not apply to Salemi’s claims asserted against Lasseigne, the officer of a Texas corporation.
^CONCLUSION
Based on the above, we find that the trial court erred in finding that the action against Raymond J. Lasseigne was prescribed under La. R.S. 12:1502(D). We. reverse the judgment of the trial court dismissing the claims of Charles R. Salemi and remand this matter to the trial court for further proceedings. AH' cost of this appeal are to be paid by the defendant/ap-pellee, Raymond J. Lasseigne.
APPEAL MAINTAINED; REVERSED AND REMANDED.

. While the facts are different in the two cases, the legal issues being considered in both appeals are identical. Similar to the instant matter, Lasseigne also filed a peremptory exception of prescription raising the objection of prescription in response to the Hill property owners’ claims against Lasseigne on the grounds of La. R.S. 12:1502(D). We address the merits of the appeal brought by the Hill plaintiffs in a separate opinion being issued at the same time as the opinion in the instant matter. See Hill v. TMR Exploration, Inc., 2016-0566 (La. App. 1st Cir. 6/13/17), 223 So.3d 556, 2017 WL 2558323.

. The defendants named by Salemi in connection with the contract claim arising out of the lease include: Park Oil & Gas, LLC, Park Resources, LLC, Donald J. Owen, Michelle D. Uria, Katana Energy, LLC, Jonsnogren Oil & Gas Properties, Inc., Edgewood Cockfield Project, LLC, McCauley O. Bullock, Jr., Inc., Bullock Interests II, LLC, Wellbore Capital, LLC, and Lord Securities, Corp.

. Notably, at no point during the consideration of this issue below was the application of former La. R.S. 12:96 (repealed by La. Acts 2014, No. 328, effective January 1, 2015) raised by the parties or considered by the trial court. As a general rule,'appellate courts will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal. Segura v. Frank, 93-1271 (La. 1/14/94), 630 So.2d 714, 725, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994): Stewart v. Livingston Parish School Bd., 2007-1881 (La. App. 1st Cir. 5/2/08), 991 So.2d 469, 474.

. A rule to show cause was issued by this court on May 4, 2016, noting that the trial court’s September 22, 2015 judgment appeared to lack decretal language dismissing the claims against Lasseigne. In response, the trial court issued an Amended Judgment signed May 18, 2016, clarifying that Salemi’s claims against Lasseigne were dismissed with prejudice.

. Based on our finding that La, R.S, 12:1502 does not apply to officers of foreign corporations, we decline to consider Sálemi’s other assignments of error regarding the application of La. R.S. 12:1502 under the facts presented herein; The jurisprudence provides that courts should not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies. See St. Charles Parish School Bd. v. GAF Corp., 512 So.2d 1165, 1170 (La. 1987) (on rehearing).

. The timeline of relevant events as outlined herein is not in dispute; therefore, the doctrine of manifest error does not apply to this court’s review. Ristroph v. Louisiana Public Facilities Authority, 2006-1669 (La. App. 1st Cir. 9/14/06), 943 So.2d 492, 494.

. We note that pursuant to La. Acts 2014, No. 328 (effective January 1, 2015) the legislature adopted the " Business Corporation Act,” which repealed and reenacted Chapter 1 of Title 12 to make Louisiana business law consistent with the Model Business Corporation Act. Louisiana Revised Statutes 12:1502 was amended by the 2014 Act to add the last sentence in La. R.S, 12:1502(A)("The provisions of this Section shall not apply to actions governed by R.S. 12:1-622, 1-833, 1-1407, or 1328(C)”). The excluded actions relate to actions for unlawful distributions against shareholders of corporations (La. R.S. 12:1-622), directors of a corporation (La, R.S. 12:1-833), members of an LLC (La. R.S. 12;1328(C)), and claims against a dissolved corporation (La. R.S, 12:1-1407).

. At the hearing on the exception and herein, Lasseigne maintains that in Wooley this court applied the provisions of La. R.S. 12:1502 to officers of foreign corporations. In Wooley, the Louisiana Commissioner of Insurance, in his capacity as the liquidator of an insolvent insurer, filed claims against the officers and directors of multiple corporate entities, both domestic (formed in Louisiana) and foreign. See Wooley, 14 So.3d at 337, 346-347. Relying on La. R.S. 12:1502, the defendants filed exceptions of prescription, which the trial court denied. In affirming that ruling, this court relied, in part, on La. R.S. 22:735(B) (see now La. R.S. 22:2008(B)), providing that the filing of a suit by the commissioner of insurance seeking an order of liquidation interrupts the running of prescription for any claim in favor of the insolvent insurer for two years, if an order of liquidation is granted. See Wooley, 14 So.3d at 463, 466-467. The effect of that interruption, together with the continuing nature of the alleged torts, were essential to this court’s conclusion that the commissioner's claims filed on behalf of the insolvent insurer had not prescribed. See Wooley, 14 So.3d at 463, 466-467. While La. R.S, 12:1502 was also cited, the citation of that statute can be construed as pertinent only to the claims against the officers of the domestic coiporation; this court never stated that La. R.S. 12:1502 applies to actions against officers of foreign corporations. The Louisiana Supreme Court later reversed on other grounds, finding Texas’ substantive law applied to the claims of breach of fiduciary duty. We do not find Wooley controlling on this issue.